MORIMURA BROS. *v.* UNITED STATES (No. 1510).[1]

STUFFED CHICKS, UNSUITED TO BE MILLINERY ORNAMENTS.

    The goods are the skins of ducklings or chicks, which skins have been dried and stuffed with cotton medicated with some preservative. There is not sufficient evidence in the record to support the contention that they are toys; nor is there sufficient evidence to warrant a reversal of the finding below that they were dutiable under paragraph 347, tariff act of 1913, as downs on the skin, dressed, not suitable for use as millinery ornaments.

United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7653 (T. D. 35016).

[Affirmed.]

*B. A. Levett* for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

[1] Reported in T. D. 35437 (28 Treas. Dec., 852).

Before Montgomery, Smith, Barber, De Vries, and Martin, Judges.

De Vries, Judge, delivered the opinion of the court:

These importations were of so-called natural ducklings and chicks. Ducklings and chicks when about two weeks old are killed and skinned. The skin is dried and thereafter stuffed with cotton medicated with a preservative agency, beads inserted for the eyes, and other materials, notably wire, inserted for the purpose of giving natural shape and form to the article as representative of a duckling or chick. The artificiality is complete. They were assessed for duty as downs on the skin, dressed, not suitable for use as millinery ornaments under the second provision of paragraph 347 of the tariff act of 1913, which said paragraph in its entirety reads:

347. Feathers and downs, on the skin or otherwise, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, 20 per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, and not suitable for use as millinery ornaments, including quilts of down and manufactures of down, 40 per centum ad valorem; artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, 60 per centum ad valorem; boas, butonnières, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material herein mentioned, 60 per centum ad valorem: *Provided*, That the importation of aigrettes, egret plumes or so-called osprey plumes, and the feathers, quills, heads, wings, tails, skins, or parts of skins, of wild birds, either raw or manufactured, and not for scientific or educational purposes, is hereby prohibited; but this provision shall not apply to the feathers or plumes of ostriches, or to the feathers or plumes of domestic fowls of any kind.

The protest claims under various provisions of the tariff act, at 20 per centum under the first provision of paragraph 347, as toys under paragraph 342, and as a nonenumerated manufactured article under paragraph 385. Other claims are made which we deem unnecessary of recital. At the oral argument the most serious contention was that the article was either dutiable as assessed or as a nonenumerated manufactured article.

While the appearance of the article strongly suggests that it is a toy, there is not sufficient evidence in the record to support that contention. Indeed, the case was tried upon the theory that that question was concluded by an early decision of the Circuit Court for the Southern District of New York. Morimura Bros. *v.* United States (141 Fed., 383). Without expressing an opinion upon this subject it might well be noted that the competing provisions of the tariff act of 1897, which were the subject of consideration in the Morimura case, are not the same as those of the present tariff act, and for that reason the Morimura case would not necessarily control decision under the

tariff act of 1913. The appraiser's report recites in this particular as follows:

The merchandise consists of natural ducklings stuffed with cotton and dressed. They are used as ornaments in trimming candy boxes and are used also to a certain extent as a toy. Not being used solely for the amusement of children in play, in the opinion of this office they are not dutiable as toys. As the down, dressed, is the component material of chief value in the article, it was returned for duty as downs on the skin, dressed, not suitable for use as millinery ornaments.

There is no evidence in the record contradicting this report, and in accordance with the decision of this court in Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 31115), upon the state of facts reported the article is not entitled to classification as a toy.

Elementally the first two provisions of paragraph 347 are predicated of feathers and downs whether on the skin or otherwise. The paragraph may be analyzed as follows:

Feathers and downs, on the skin or otherwise:

(*a*) When crude or *not dressed*, and colored or otherwise advanced or manufactured in any manner.

(*b*) When *dressed*, and colored or otherwise advanced or manufactured in any manner, and not suitable for use as millinery ornaments.

Its language would seem upon the face of this record to conclude the inquiry. The subject matter of these provisions of the paragraph are feathers and downs on the skin *or otherwise*. Such feathers and downs are by the paragraph divided into two classes for dutiable purposes—(*a*), those not dressed, and (*b*), those dressed. To be brought within (*a*) or (*b*), however, the article must be downs on the skin "advanced or manufactured in any manner." The first inquiry, therefore, is, Are these articles downs on the skin advanced or manufactured in any manner? They were concededly downs on the skin when the manufacturing process was commenced, whereupon they were combined with other materials into an article known as natural ducklings or chicks. The term "advanced or manufactured *in any manner*" is exceedingly broad, and its natural import necessarily includes any article in chief value of down on the skin. "Manufactured in any manner" under any construction of that term is sufficiently broad to include manufactured wholly or substantially wholly of an article or manufactured in chief value of the article.

This brings us to the questions of fact in the case. First, are these skins as found in the article dressed or not dressed; and, secondly, are these articles in chief value of such skins? The return of the appraiser approved by the collector recites that down, dressed, is the component material of chief value in the article. The importer sought to disprove this finding of the appraiser. One witness was introduced, who evidently labored under the difficulty of not accu-

rately catching the import of the questions addressed him, and for
that reason not having properly measured his answers.   There is,
nevertheless, sufficient in the record of his testimony to indicate
that these skins after being taken from the animal are first dried
in the sun and are then subjected to a preservative agency.   The
degree of preservation is not indicated.   It is, however, as shown
by an examination of the article in question, sufficient to preserve
them for all purposes for which they are used. . From an examination
of the articles themselves, both as to the question of whether or
not the skins are preserved and upon the question of component
material of chief value, measured in the light of all the testimony
in the record, we are unable to say that there is not sufficient to
sustain the findings of the Board of General Appraisers in these
two particulars and which upheld the assessment as made by the
collector.   In fact there is no evidence squarely to the contrary
The decision of the Board of General Appraisers is therefore *affirmed*.