MORIMURA BROS. · v. UNITED STATES (No. 1723).[1]

STUFFED CHICKS AND DUCKLINGS.

Dried skins of chicks and ducklings with the heads and feet attached, stuffed with cotton, fitted with bead eyes and wired so as to give them a natural appearance, and having a wire attachment apparently for the purpose of fastening them to other objects as decorations, were classified by the collector as "down dressed on the skin, * * * not suitable for use as millinery ornaments," paragraph 347, tariff act of 1913. The Board of General Appraisers affirmed the collector's decision, overruling protests claiming them to be "birds and land and water fowls" (par. 416), feathers and downs not advanced (par. 347), articles manufactured in whole or in part and not provided for (par. 385), manufactures of cotton (par. 266), and toys (par. 342). The decision of the board is affirmed.

United States Court of Customs Appeals, January 16, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39573.

[Affirmed.]

B. A. Levett for appellants.

Bert Hanson, Assistant Attorney General (Luke Lamb, special attorney, of counsel), for the United States.

[Oral argument Oct. 19, 1916, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The merchandise in this case is made of the dried skins of chicks and ducklings with the heads and feet attached. By inserting beads for eyes and by wiring and stuffing the skins with cotton the goods have been given· the appearance and form of natural chicks and ducklings. The collector of customs classified the chicks and ducklings as "down dressed on the skin * *· * not suitable for use as millinery ornaments," and assessed them for duty at 40 per cent ad valorem under that part of paragraph 347 of the act of 1913 which reads as follows:

347. Feathers and downs, on the skin or otherwise, * * * when dressed, colored, or otherwise advanced or manufactured in any manner, and not suitable for use as millinery ornaments, * * * 40 per centum ad valorem; * * *.

The importers filed 16 protests, in all of which they claimed that the merchandise was either free of duty as "birds and land and water fowls" under paragraph 416, or dutiable at 20 per cent ad valorem under paragraph 347 as feathers and downs not advanced, or at 15 per cent ad valorem under paragraph 385 as articles manufactured in whole or in part and not provided for, or at 30 per cent ad valorem under paragraph 266 as manufactures of cotton. In 14 of the protests the importers made the additional claim that the goods were toys and that they were dutiable as such under paragraph 342, which reads as follows:

1 Reported in T. D. 36960 (32 Treas. Dec., 75).

342. Dolls, and parts of dolls, doll heads, toy marbles of whatever materials composed, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this section, 35 per centum ad valorem.

The Board of General Appraisers overruled all the protests and the importers appealed.

By reason of our decision in Morimura *v.* United States (6 Ct. Cust. Appls., 183; T. D. 35437) the brief of the appellants is expressly confined to a discussion of the claim that the goods are toys. We therefore regard all other claims as abandoned and will limit ourselves to the consideration of whether the articles are toys.

It is contended by the importers, first, that articles such as those under consideration have been commercially classified as toys, and, second, that they are toys in fact as shown by their use. The record discloses no evidence in support of the first contention other than testimony which went no further than the declaration that chicks and ducklings of the kind imported were sold to toy houses and to the toy departments of department stores. That testimony, standing alone, however, can hardly be regarded as establishing that the articles were definitely, uniformly, and generally known to the trade as toys, inasmuch as the very same witnesses who gave the testimony took occasion to say that such goods were also sold to the candy and confectionery trade, a trade which apparently uses chicks and ducklings as decorations rather than as playthings.

To sustain the contention that the goods were toys in fact three witnesses testified on behalf of the importers as to the uses to which the merchandise was devoted. Louis W. Gresman said that he had seen children playing with the chicks and ducklings, particularly at Easter time. He said that on one occasion he had donated chicks and ducklings to an orphan asylum and on Easter morning he had seen from 200 to 250 orphans playing with them. He had also seen the chicks and ducklings attached to little wagons and mounted on candy boxes in confectionery stores. A. W. Walter stated that he had seen the chicks and ducklings during the Easter season used by children as many as 50 times. He had also seen them attached to candy boxes and Easter baskets. J. V. Carroll declared that goods of the class of those imported were used as playthings by children, but that he had seen them attached to candy boxes in candy stores, especially at Easter.

On the part of the Government, M. Shackman testified that he was a favor and novelty importer and that the goods were sold to toy stores, confectioners, caterers, stationers, and others engaged in the business of handling novelties. He said the chicks and ducklings were used to attach to a wagon for a child or as a filling for big Easter eggs, or as a decoration for Easter baskets, or as place-card favors.

In his opinion, their use by confectioners for decorative purposes was fully as great as their use as toys.

The board found that the goods were not only used by children as playthings, but also by adults as place-card favors and Easter decorations and as ornaments for candy boxes and baskets, as well as for other decorative purposes. As that finding is not at variance with the testimony and is fully supported by the evidence submitted both by the Government and the importers, we can not say that the board erred in holding that the articles in question have a reasonable use other than the amusement of children. Indeed, as all of the chicks and ducklings are fitted with a wire extending some 2 or 3 inches beyond the bottom of the foot, it would seem that they were designed to be attached to something else and that their use for decorative purposes, far from being fugitive or incidental, was taken into serious consideration when the goods were manufactured.

The decision of the Board of General Appraisers is *affirmed.*