UNITED STATES *v.* MEIER & FRANK Co. (No. 1338).[1]

KINDERGARTEN EMBROIDERY SETS—TOYS.

These embroidery sets that are used in kindergarten work are essentially toys, useful only for the amusement of children, whether with or without accompanying instruction.

United States Court of Customs Appeals, March 25, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34400 (T. D. 34033). [Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, special attorney, of counsel; *Martin T. Baldwin*, special attorney, on the brief), for the United States. Submitted on record by appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court.

The merchandise now in question consists of certain embroidery sets intended for use in kindergarten schools. Each set consists of a number of pieces of cotton cloth, cardboard, and colored yarns, with various printed patterns and some completed samples of embroidery work, the whole loosely fastened together in a pasteboard box. The so-called cotton cloth is composed of very heavy single transverse threads which form large open interstices. Through these the colored yarn is carried so as to form embroidered figures in imitation of the given patterns. In most cases the yarn could easily be recovered from the finished figures so as to be worked over again into other patterns upon the same cotton frame, but the materials are so cheap that there would probably be little advantage in this. The sets are used in kindergarten schools for the amusement of small children and their instruction in simple embroidery.

Duty was assessed upon the importation at the rate of 60 per cent ad valorem under the provision for embroideries and embroidered articles contained in paragraph 349 of the tariff act of 1909. The importers duly filed their protest against that assessment, claiming the sets to be toys, dutiable as such at the rate of 35 per cent ad valorem by force of paragraph 431 of the same act.

The protest was submitted upon evidence to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

The following is a copy of the relevant parts of paragraph 349 and of all of paragraph 431 of the tariff act of 1909:

349. Laces, * * * embroideries, * * * wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, * * * ; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, * * * and not elsewhere specially provided for in this section, sixty per centum ad valorem: * * *

---

[1] Reported in T. D. 34330 (26 Treas. Dec., 565).

431. Dolls, and parts of dolls, doll heads, toy marbles of whatever materials composed, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this section, thirty-five per centum ad valorem.

The following definition of "toys" was written by Judge Smith for this court in the case of Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 31115), and the same is approved as authoritative in the present case:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

The sole question raised by the present record is whether the articles above described are toys according to the definition just above copied. The board held upon the evidence that the articles are toys within that definition.

It is conceded that the articles in question are part of the usual equipment of kindergarten schools in this country. This fact, however, is not entitled to have a controlling effect upon the present case, for it can not be said that the use of an article in a kindergarten school would effectually prove that the article itself either is or is not a toy. It is certainly the case that some of the articles which are used in such schools are toys and that some are not, and in each case the essential character of the given article would remain the same regardless of such use. For example, it may safely be said that blocks bearing pictures or letters of the alphabet or other designs, intended for the amusement of children at play, are toys. The same articles, however, might also be used in kindergarten work for the combined amusement and instruction of small children and nevertheless retain their character as toys. In such a case the school would simply be making use of children's games as means of combined amusement and instruction, and articles thus used would not be excluded from the accepted definition of toys as being "reasonably capable of use for some practical purpose other than the amusement of children." It is indeed well known that this is the principle upon which kindergarten schools are established, namely, the teaching of useful lessons to very young children by means of games and playthings. This fact is exemplified by the following definition:

Standard:

*Kindergarten.* A school for little children in which instructive diversions, object lessons, and healthful games are prominent features.

Therefore if the articles used in such schools are toys when used outside of the school they would remain toys when used inside of the school; otherwise the same articles upon importation would be dutiable as toys if intended for general sale, but not dutiable as toys if intended for use in a kindergarten.

The present merchandise was assessed as embroidery or embroidered articles. The sets, however, are so juvenile in character that they serve none of the serious or practical purposes of embroideries; the embroidered pieces are neither useful nor ornamental in that character. They can not become parts of wearing apparel or household furnishings or other useful or ornamental articles; they really find their natural and proper place in a child's playhouse along with dolls and like playthings. If they were not used in kindergarten work, the sets would probably be classified as toys without question. Indeed, the collector himself in making his official return of the protest refers to the protested articles as "certain embroidered toys." The court is of the opinion that the sets in question are essentially toys, useful only for the amusement of children, whether with or without accompanying instruction, and in this view the decision of the board was correct and the same is *affirmed*.