UNITED STATES *v*. AUGUST MERCKENS (No. 3191)[1]

---

[1] T. D. 43742.

United States Court of Customs and Patent Appeals, November 25, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument October 7, 1929, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court holding that certain small slot machines were dutiable at 30 per centum ad valorem under the provision for "all other machines or parts thereof, finished or unfinished, not specially provided for," contained in paragraph 372 of the Tariff Act of 1922. The paragraph reads as follows:

PAR. 372. Steam engines and steam locomotives, 15 per centum ad valorem; sewing machines, and parts thereof, not specially provided for, valued at not more than $75 each, 15 per centum ad valorem; valued at more than $75 each, 30 per centum ad valorem; cash registers, and parts thereof, 25 per centum ad valorem; printing presses, not specially provided for, lawn mowers, and machine tools and parts of machine tools, 30 per centum ad valorem; embroidery machines, including shuttles for sewing and embroidery machines, lace-making machines, machines for making lace curtains, nets, and nettings, 30 per centum ad valorem; knitting, braiding, lace braiding, and insulating machines, and all other similar textile machinery or parts thereof, finished or unfinished, not specially provided for, 40 per centum ad valorem; all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; cream separators valued at more than $50 each, and other centrifugal machines for the separation of liquids or liquids and solids, not specially provided for, 25 per centum ad valorem; combined adding and typewriting machines, 30 per centum ad valorem; all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: *Provided*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Exhibit 1 is representative of the merchandise. It is composed of glass and tin and is approximately 6¼ inches in height and 3 inches in width. It is in the nature of a so-called vending machine, having a slot in which a penny may be dropped, whereupon, by the pulling of a slide, a small bar of chocolate is delivered to the operator. The pulling of the slide causes the penny to drop into a receptacle at the

bottom. When the supply of small chocolate bars is exhausted others, called refills, may be supplied, and the article is again ready for operation. On one side of the exhibit appears the following: "A cent saved is a cent earned." The articles are somewhat fancifully decorated with designs intended to attract the attention of children and were, undoubtedly, designed to be used by them.

The merchandise was assessed for duty by the collector at the port of New York as "toys" at "70 per centum ad valorem" under paragraph 1414 of the Tariff Act of 1922, which reads as follows:

PAR. 1414. Dolls, and parts of dolls, doll heads, toy marbles, of whatever materials composed, air rifles, toy balloons, toy books without reading matter other than letters, numerals, or descriptive words, bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

The importer protested the assessment, claiming that the merchandise was dutiable as machines at 30 per centum ad valorem under paragraph 372.

The court below, in an opinion by Sullivan, J., said:

On cross-examination it was further established that, to operate the article, not only must a cent be inserted in the slot but the handle must be pulled, or, in other words, "the piece of chocolate slips out when you pull the lever in the front, not otherwise"; that there is "no use for this other than by children"; that "it appeals to the sense of the child" as "an incentive to use the penny to get the chocolate out of the machine"; that "it is not to be used as a toy"; that "it could be used by adults," but "it is more to appeal to a child."

While this article probably amuses the child, it is clear that amusement is not its only purpose. It tends to impart to the child lessons in thrift, and, in addition, it serves as a container for pieces of chocolate, and to prevent the child from eating the same unless he pays for it. We think "it is reasonably capable of use for some practical purpose other than the amusement of children"; therefore under the well-known rule in the *Illfelder* case, 1 Ct. Cust. Appls. 109, 111, T. D. 31115, "it can not be classed as a toy."

It is contended by the Government that the articles in question have no practical use; that they are designed solely for the amusement of children; and that the facts in this case bring the articles within the rule announced in the case of *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115. In that case, in an opinion by Smith, J., this court, among other things, said:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

The evidence in the case, while not very satisfactory, is sufficient to establish that the articles were designed, not only for the purpose of amusing children, but also for the purpose of instilling into the child mind the value of money and the idea of thrift—the child operator must pay for each piece of candy he obtains. Of course, children might be entertained to some extent by the mere mechanical operation of the machines, but we are inclined to the opinion that this entertainment is but incidental. It must be borne in mind that the machine will not function unless it contains these "bars" and that the real purpose of the operator is to secure one or more of them. It might be said also that the articles are convenient containers for chocolate bars and, to a degree, serve the purpose of "penny banks," and that the articles were designed for all of these purposes. There is no evidence in the record that they are ever used by children as mere playthings, nor does an inspection of the exhibit in the case, in our opinion, indicate that they are so used. Confining our consideration of the case to evidentiary, as distinguished from imaginary, facts, we are of opinion that the so-called vending machines are not mere playthings but are reasonably capable of use for practical purposes other than the amusement of children, and that they were so intended and designed. They do not, therefore, come within the definition of toys as announced in the *Illfelder* case, *supra*.

It is further contended by the Government that the articles are too flimsy and too small to come within the definition of a machine as announced in the case of *Simon, Buhler & Baumann v. United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. We there said that a machine is "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion." This definition was approved by this court in the case of *United States v. Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075, and it was there held that radio receiving sets were machines within the definition.

It is true, as argued by counsel for the Government, that the articles are somewhat flimsy in structure, and simple in operation. However, they are not, for these reasons, excluded from the provisions for machines. We think they are clearly within the definition of machines as laid down in the *Simon, Buhler & Baumann* and *Janson* cases, *supra*, and we so hold.

The judgment is *affirmed*.

### DISSENTING OPINION

BLAND and GARRETT, Judges: We are unable to concur with the majority of our associates in the reasons which they assign for holding that the small tin and glass toy slot machines in controversy are not toys, and also can not concur in the finding that they are "other machines or parts thereof."

The majority holds that they are not toys because the evidence in the case, which it says is not very satisfactory, is sufficient to establish that the articles were designed not only for the purpose of amusement but also "for the purpose of instilling in the child mind the value of money and the idea of thrift." The majority opinion calls further attention to the fact that the machine is a container for candy bars and serves the purpose of "penny banks." Since playing with the toy instills thrift into the mind of the child, and since it may be regarded as a penny bank, it is therefore, according to the majority view, not to be regarded as a toy.

Regardless of what may be said about penny banks not being toys, we can not agree that the fact that a lesson in thrift is drawn from playing with the slot machine at bar makes it any less a toy.

There are very few toys played with by children which do not impart some lesson or bring about some mental activity of the child which is profitable and helpful, but this, in our opinion, is the characteristic of most toys and is not a quality which should remove them from the toy category. A boy plays with blocks, or a miniature steel bridge in sections, and many other mechanical toys which are, unquestionably, toys, and in playing with them, develops a mechanical aptitude and acquires rudimentary principles of the mechanical arts and many other helpful mental evaluations too speculative and numerous to suggest here. Suffice it to say that all lessons instilled and the mental training acquired come from the playing with the toy. If benefits to the child mind, brought about by the playing with the toy, were to occasion the removal from the toy paragraph of all articles which occasioned such benefits, there would be few articles left in the paragraph. To our way of thinking, this is not a fair construction of the paragraph nor a fair application of the rule in the *Illfelder* case, which, in its precise definition of a toy, never purposed to deny toy classification to an article like the one at bar because of the fanciful reason that the improvement of the child mind was an "other purpose."

In *United States* v. *Meier & Frank Co.*, 5 Ct. Cust. Appls. 208, T. D. 34330, this court in holding certain embroidery sets used in kindergarten work to be toys under paragraph 431 of the act of 1909, rather than embroideries under paragraph 349 of the same act, stated as follows:

It is conceded that the articles in question are part of the usual equipment of kindergarten schools in this country. This fact, however, is not entitled to have a controlling effect upon the present case, for it can not be said that the use of an article in a kindergarten school would effectually prove that the article itself either is or is not a toy. It is certainly the case that some of the articles which are used in such schools are toys and that some are not, and in each case the essential character of the given article would remain the same regardless of such use. For example, it may safely be said that blocks bearing pictures or

letters of the alphabet or other designs, intended for the amusement of children at play, are toys. The same articles, however, might also be used in kindergarten work for the combined amusement and instruction of small children and nevertheless retain their character as toys. In such a case the school would simply be making use of children's games as means of combined amusement and instruction, and articles thus used would not be excluded from the accepted definition of toys as being "reasonably capable of use for some practical purpose other than the amusement of children."

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

The court is of the opinion that the sets in question are essentially toys, useful only for the amusement of children, whether with or without accompanying instruction, and in this view the decision of the board was correct and the same is *affirmed*. [Italics quoted.]

Furthermore, if the article is not a toy, we could not agree that it comes within the provisions for "all other machines or parts thereof." Paragraph 372 is known as the machine paragraph and provides for steam engines and steam locomotives, sewing machines, cash registers, printing presses, lawn mowers, embroidering machines, machines for making lace curtains, etc., knitting, braiding, lace braiding, and insulating machines, cream separators, centrifugal machines, combined adding and typewriting machines, *and all other machines and parts thereof*. Surely Congress could not have contemplated that this flimsy tin and glass toy, 6 by 3 inches in size, played with exclusively by children, should be regarded as a machine. It does not rise to the dignity of a machine. While technically it may be "a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion," referred to in *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, it certainly is not the kind of mechanical contrivance there under consideration nor is it reasonably within the category of contrivances in the mind of the court when that decision was written. A toy jumping jack may utilize energy or force or transmit motion, and yet it is hardly a machine within paragraph 372. The strict and technical letter of the decision is applied by the majority of the court with such force as to bring about an anomalous and incongruous result. Decisions should be followed to their exact letter only where the facts are similar and the result obtained is not anomalous. *Cohens* v. *Virginia*, 6 Wheat. 264, 399; *Brooks* v. *Marbury*, 11 Wheat. 78, 90.

Recently in *United States* v. *B. Illfelder & Co.* and *Louis Wolf & Co.*, 17 C. C. P. A. 197, T. D. 43646, toy moving-picture machines were held to be toys. They were shown to be used by children exclusively. If it had been shown that playing with them improved the mind of the child, they should have been regarded as machines, under the majority viewpoint in the instant case. In our view of the case they were toys, and if there had been no toy paragraph they would not have been classifiable as machines, since childish playthings which

"utilize energy or force," if they are used for no other purpose than as playthings for children, are not the kind of machines Congress had in mind in the enactment of the machine paragraph.

In *United States* v. *Wanamaker*, 15 Ct. Cust. Appls. 310, T. D. 42485, this court held that "Congress intended that paragraph 1414 should include toys of every kind and character except those excluded from its operation by the express terms thereof," and that toy steam engines, although they were engines in a sense, were included within the toy paragraph. No testimony is required to convince the judicial mind that playing with the engine would impart to the mind of the child a valuable knowledge of the fundamental principles of steam engineering. It would seem that the toy engine and the toy vending machine should receive the same tariff treatment.

Attention might be called to the fact that if the principle laid down in the majority opinion is adhered to in future classification and litigation, it is laying the fence down for the practical destruction of the toy paragraph, since it is evident that any clever mind can suggest a lesson which the child learns by playing with almost any toy.

We think the toy slot machine is not an engine, and if, for any reason, it could not be held to be a toy, its proper classification should have been controlled by its component material of chief value.