H. Boker & Co. (Inc.) *v.* United States (No. 3395) [1]

United States Court of Customs and Patent Appeals, April 27, 1931

*B. A. Levett* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument April 2, 1931, by Mr. Levett and Mr. Folks]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Graham, Presiding Judge, delivered the opinion of the court:

The appellant imported at the port of New York certain merchandise which was named on the invoice as matador, and which was classified by the collector as toys under the provisions of paragraph 1414 of the Tariff Act of 1922. The importer protested, claiming it to be dutiable under paragraph 410 of said act as manufactures of wood, or, alternatively, as unenumerated manufactured articles under paragraph 1459 thereof. The United States Customs Court overruled the protest, and the importer has appealed.

The merchandise in question consists of sets of various sizes and prices, each set being inclosed in a separate box, and which sets consist of wooden sticks, round, spoollike perforated pieces of various sizes, and perforated wooden blocks of various lengths. Some of the

---

[1] T. D. 44870.

more expensive sets have additional parts, such as washers, metal rods, wooden combs, etc. Inclosed in each box is a book of instructions giving illustrations of various objects which can be built from said pieces, with instructions for building the same. These instruction books describe the sets as "Boycraft"

The various objects to be made out of these sets are made by the insertion of the sticks into the various holes in the blocks and other pieces. There were introduced in evidence three structures built from the materials in some of the more elaborate and expensive sets, one of these articles being a loom, another a drill press, and the other a stamp mill. These were built in the shop where the imported sets are manufactured, by mechanics in the shop, and were exhibition pieces. One of the witnesses, in illustrating the use of these sets, built a small cart out of one of the cheaper sets in the presence of the court below, which is also in evidence as Exhibit E. The testimony shows that the loom, Exhibit C, can be used for weaving small pieces of cloth, a sample of which was exhibited to the court below.

Counsel for the importer makes the following statement:

* * * The models may be and undoubtedly would be classified as toys if imported in the finished condition. In fact, it is obvious that the models when completed can not be used for anything other than for the amusement of children, unless, perhaps, to be placed upon a shelf and exhibited by fond parents as evidence of the brightness of their children.

We find ourselves in agreement with this statement. Certainly the exhibits which have been proffered, and which show the use to which these sets are put, can not be considered in any other light than as toys, fitted only for the amusement of children.

It is, however, contended by counsel for the importer that the sets in question are not in themselves toys, but are capable of a use other than for the amusement of children—namely, for their instruction—and that in the use of these sets the child acquires valuable training which is of great assistance in his education. To support this theory proof was introduced to show that these sets are used in the schools in Austria as a regular part of the curriculum for the educational training of children. Otherwise the proof shows that these sets are sold in hardware and chain stores and in the toy departments of department stores, and are used in homes by children for their entertainment and with whatever incidental educational effect may result from the use thereof.

In *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, Smith, J., speaking for this court, defined the common meaning of the word "toy" as it appeared in paragraph 418 of the Tariff Act of July 24, 1897. This definition has been often quoted and is as follows:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children

only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

Judge Smith, in giving this definition, did not refer to the adaptability for, and use of, an article in foreign countries, but that definition was given having in mind its adaptability for use and its use in the United States.

The use which has been made of these articles of importation in foreign countries is no guide to their classification here. We had a somewhat similar case before us in *Taylor* v. *United States*, 3 Ct. Cust. Appls. 498, T. D. 33162, in which we were considering an importation claimed to be entitled to free entry under paragraph 581 of the Tariff Act of August 5, 1909, as "substances used only for manure." We there commented upon the fact that while in England, the country of exportation, the material imported was not considered as suitable for feeding livestock, in this country the opposite condition was true, and the classification of the material was to be governed by its use in this country. This must be the law. Our tariff laws are made having consideration for the conditions in this country and not those in foreign ones.

We are of opinion the articles of importation are toys. We are unable to understand why, if the objects to be made from these sets are, in themselves, toys, the parts from which they are made are not also toys. They are, in our opinion, articles intended and designed for the amusement of children only and have no other practical purpose.

The fact that in the use of these sets some incidental educational value may be found does not remove them from the classification as toys. A similar question was involved in *United States* v. *Meier & Frank Co.*, 5 Ct. Cust. Appls. 208, T. D. 34330, where certain embroidery sets, intended for use in kindergarten schools, were involved. The court, speaking through Martin, J., commented upon the kindergarten use of these articles but came to the conclusion that this use did not militate against the articles being considered and classified as toys. Incidental training for a child is frequently found in games, but this has not prevented this court from considering such games as toys. *United States* v. *Wolf & Co.*, 17 C. C. P. A. (Customs) 310, T. D. 43719.

Error is assigned on the refusal of the court below to admit in evidence certain letters, plans, drawings, etc., marked "Exhibit 4," for identification, which letters were offered for the purpose of showing a competition among children in drawing designs for structures to be

built from the articles in question. We find no error in this ruling of the court. These documents were too far removed from the matter in issue to be considered as relevant or competent.

Finding no error in the record, the judgment of the United States Customs Court is *affirmed*.