## ILLFELDER *v.* UNITED STATES (No. 112).[1]

SPARKLERS OR SPARKLETS.

. A mixture of iron filings, magnesium, aluminum, nitrate of barium, and gum, attached to a thin strip of metal to serve as a handle, constituting what are known as "sparklers" or "sparklets," were not dutiable as toys under paragraph 418, tariff act 1897, but as manufactures of metal under paragraph 193 of said act.

United States Court of Customs Appeals, November 30, 1910.

TRANSFERRED from the United States Circiut Court for the Southern District of New York, G. A. 6885 (T. D. 29625.)

[Affirmed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

SMITH, Judge, delivered the opinion of the court:

A mixture of iron filings, magnesium, aluminum, nitrate of barium, and gum, in proportions not disclosed by the record, attached to a

---

thin strip of metal or wood to serve as a handle, constitutes an article of merchandise known as "sparklers" or "sparklets." When ignited by a lighted match or by scratching a match-like preparation with which the end of some of the "sparklers" is fitted, a vigorous combustion of the magnesium and iron filings is immediately set up, followed by a display of brilliant sparks, stars, and scintillations. The combustion of the metallic components of the merchandise produces heat enough to raise perceptibly the temperature of the metal handle to which the composition is attached, but it seems that the particles of burning metal given off in the form of stars, sparks, and scintillations are so quickly consumed that the "sparklers" may be used even by children with little or no risk of personal injury.

These wares are handled principally by importers and dealers in toys and to some extent by importers and dealers in fireworks.

They were assessed for duty by the collector of customs at the port of New York under paragraph 193 of the tariff act of 1897 as articles or wares not specially provided for and composed in part of metal. The importer protested that the goods should have been assessed under paragraph 418 as "toys," at 35 per cent ad valorem, or at 30 per cent ad valorem under paragraph 421 as "fulminates, fulminating powders," or like articles, or at 20 per cent ad valorem under section 6 of the act as a nonenumerated manufactured article not provided for, or under paragraph 423 as matches at 8 cents per gross boxes.

The Board of General Appraisers decided that the "sparklers" or "sparklets" were not toys, fulminates, or fulminating powders, but articles composed in part of metal, not specially provided for, and therefore dutiable as assessed. The importers appealed to the United States Circuit Court for the Southern District of New York, and the appeal so taken has been certified to this court for further proceedings in accordance with the tariff act of 1909.

Counsel for the importers concede that the wares are not commercially known as toys, but insist that they should be assessed for duty as such, for the reason that "they are intended mainly for the use and amusement of children," and therefore fall within the common meaning and signification of the word "toy" as popularly understood.

The evidence produced on the hearing before the Board of General Appraisers is quite scant, not to say unsatisfactory, but considered in conjunction with the merchandise itself it may be fairly inferred that the sparklers are intended mainly for the amusement of children, and that they are used by children for that purpose. The contention, however, that such a purpose and such a use are of and by themselves sufficient to bring the goods within the popular meaning of the word "toy" must be accepted with some reservation. While some of the dictionaries and even some of the decisions define a toy to be any

article *used* by children for their amusement, a thing the *main purpose or use* of which is the amusement of children, any article *primarily intended* for the entertainment and amusement of children, we can not admit that these definitions accurately or correctly define a toy as commonly or generally understood, including as they do many things not popularly recognized as toys. Manifestly such difinitions are altogether too broad and are open to the very serious charge of inexactness. In fact, failing utterly to so describe a toy as to distinguish it from other things, and especially from things which are not toys though serving to amuse children, they are wanting in the essentials of definition and are definitions only in name.

A toy is a thing to amuse children, but it does not follow that everything which amuses children or which enters into a device for their amusement is itself a toy. Wanamaker *v.* Cooper (69 Fed. Rep., 465; Thanhauser *v.* United States (159 Fed. Rep., 228).

Ping pong, originally a child's tennis, baseball, a development of the schoolboy game of "one old cat," handball, football, croquet, hockey, battledoor and shuttlecock, casino, checkers, and backgammon are all games played by and eminently fitted to amuse children. Indeed at an early period of their history some of them appear to have been exclusively children's games. In the popular mind, however, tennis and ping pong nets and rackets, balls and bats, croquet mallets and wickets, battledoors and shuttlecocks, playing cards, checkers, and checker and backgammon boards are not regarded as toys, for the simple and sensible reason that they are not the implements of games which are *exclusively* the diversions of children. United States *v.* Strauss (136 Fed. Rep., 185–187), reversing United States *v.* Strauss (128 Fed. Rep., 473); United States *v.* Cattus (167 Fed. Fep., 532); Thanhauser *v.* United States (159 Fed. Rep., 228–232).

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

Magnesium for a brilliant white light, metal filings for sparkling, scintillating effects, gum to retard, and nitrate of barium to give a greenish tinge to the combustion are recognized by manufacturers of fireworks as valuable pyrotechnic agents, and these components of the merchandise under discussion are not infrequently used by such manu-

facturers as important elements in the creation of various kinds of pyrotechnic displays. In composition, in manufacture, and in the effects to be produced sparklers differ in no essential particular from fireworks—in fact they *are* fireworks, and just as capable of furnishing amusement to adults as are pinwheels, serpents, gerbes, Roman candles, or other devices which are made to please the eye with brilliant lights, colored fires, and dazzling scintillations. They are utterly lacking in the characteristics of the typical plaything, such as the doll, the Noah's ark, the top, and countless other things which may be used again and again to delight the mind of childhood, and which are fit for no other purpose. The toy is a plaything, and that implies something which may be played with, something which may serve the purpose of amusing the child more than once. A device which must of necessity be destroyed in order to amuse does not come within the category of a toy—a plaything. Since 1792, the year in which toys were first mentioned by name in a tariff act, many hundreds of articles have been classified as toys. In all the list of articles so classified, however, we have been unable to find one which of necessity had to be destroyed in order to amuse. The classification as toys of magic flowers, decalcomanias, water paints, and small candles used as a decoration on Christmas trees does not sustain the contention of counsel to the contrary. Magic flowers and decalcomanias are just as capable of amusing after as before their development. Their use does not end their power to please. The same may be said of water paints. Blumenthal *v.* United States (72 Fed. Rep., 48) did not pass on the classification of water paints, but on that of harmonicas, articles the power of which to amuse is evidently not contingent upon their destruction. The candle case is not in point, inasmuch as the decision in that case did not turn on the ordinary meaning of words, but on the proved fact that the goods were commercially known as "toy candles." Fulminates and fulminating powders are highly explosive preparations resulting from the chemical combination of a metallic base with a nonisolated acid known as fulminic acid. The sparklers in character, composition, and purpose bear no resemblance whatever to fulminates or fulminating powders and can not be so classified. The fact that some of the sparklers are equipped at the end with a matchlike preparation in order that they may be readily lighted and so produce the effect for which they are manufactured does not justify their assessment for duty as matches, and *a fortiori* those not so equipped must be excluded from that category.

The decision of the Board of General Appraisers is affirmed.

DE VRIES, Judge, having participated in the decision of the board, did not sit.