CARSON, PIRIE, SCOTT & CO. *v.* UNITED STATES (No. 684).[1]

TEDDY-BEAR MUFFS—TOYS.

The articles, "Teddy bears," have the shape of dolls with heads representing bears; the testimony shows they are sold to and handled by toy dealers almost exclusively; they are not reasonably fit for any use except to amuse children; they are toys and are dutiable as such under paragraph 431, tariff act of 1909.—Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 31115).

## United States Court of Customs Appeals, December 19, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7214 (T. D. 31540).

[Reversed.]

*McLaughlin, Russell, Coe & Sprague* (*Edward P. Sharretts* of counsel) for appellants.

*Wm. L. Wemple*, Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal involves the dutiable classification of so-called "Teddy-bear muffs." They were assessed for dutiable purposes by the collector at the rate of 44 cents per pound and 60 per cent ad valorem as wool wearing apparel under the provisions of paragraph 382 of the tariff act of 1909, which reads:

382. On clothing, ready-made, and articles of wearing apparel of every description, including shawls whether knitted or woven, and knitted articles of every description made up or manufactured wholly or in part, felts not woven, and not specially provided for in this section, composed wholly or in part of wool, the duty per pound shall be four times the duty imposed by this section on one pound of unwashed wool of the first class, and in addition thereto sixty per centum ad valorem.

Appellants here, who were protestants below, maintained that they were toys within the language of paragraph 431 of the same act, which is as follows:

431. Dolls, and parts of dolls, doll heads, toy marbles of whatever materials composed, and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for in this section, thirty-five per centum ad valorem.

The articles are in the shape and form of so-called "Teddy bears" and range in size from 12 inches high and 7 inches wide to 14 inches high and 8 inches wide. One of the official samples is white and the other is of a tan color. While they are characterized "Teddy bears" they are in fact and in the shape and form of dolls with heads representing bears.

This court in Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 31115) laid down a rule of decision as to what constituted a toy in the following language:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is reasonably fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults,

or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

That definition in its pronouncement of essentials and their limitations, we think, is in complete accord with the theretofore adjudicated cases.

While the testimony in this record is scant and unsatisfactory there is sufficient, when taken in conjunction with the samples, to indicate the purpose and uses of the imported articles. If they are intended for a useful purpose that purpose is as a fur muff. In construction they are far short of such. They are made of an exceedingly poor quality of pile fabric which from the nature of its construction is not only a very poor representation of a fur or bear skin, and in strength and durable qualities would seem to permit of but little wear. That this was the intention of the manufacturers is further manifested by the fact that the articles are sewn together in what might be properly characterized little better than temporary construction.

In order to conserve the appearance of a doll or bear, the width is made so narrow that but little if any warmth could be afforded the hands of a child during cold weather. The muff aperture is made from side to side.

The uncontradicted testimony in the record is that these articles are sold to and handled by toy dealers almost if not exclusively; that when they are dealt in by department stores they are found in the toy department.

There is no testimony of trade use. The Board of General Appraisers was divided in its opinion and we are constrained to approve the opinion of the dissenting general appraiser, Chamberlain. It is conceded by all parties to the record that the articles are chiefly used for the amusement of children, but it is contended that they are also designed and used for the practical purposes of muffs. With the dissenting general appraiser we do not think they are reasonably fit for any other use than that of the amusement of children. Their size, construction, apparent durability, and every appearance, in our mind, conduces to this conclusion.

While they are incidentally useful, they are a plaything that can not with comfort be enjoyed except in seasons and in a manner that inevitably conduces in a slight measure to a useful purpose. This, however, we take as an incidental use growing out of the very nature of the article itself and necessitated by the character of the toy in order that it may be devoted to the amusement of children. The article is plainly so designed and constructed that while not in use as a muff it could be and probably is used as a doll. Its proportions, structure, and appearance are indeed more those of a doll than of a muff.

The decision of the board is *reversed*.