UNITED STATES *v.* SCHOEMANN & MAYER (No. 3225)[1]

United States Court of Customs and Patent Appeals, November 4, 1929

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument October 8, 1929, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The United States has appealed from a judgment of the first division of the United States Customs Court sustaining the protest

of importer against the collector's classification of certain papier-mâché dogs as toys and their assessment with a duty of 70 per centum ad valorem under paragraph 1414 of the Tariff Act of 1922.

The claim relied upon in the protest of appellee was that the merchandise was dutiable at 40 per centum ad valorem under paragraph 921 of said act as a "manufacture in chief value of cotton, not specially provided for."

It was agreed between the parties in the trial below that the component material of chief value in the article was cotton.

While there may be a slight conflict in the testimony, we think the record fairly shows that this kind of papier-mâché dog is used chiefly, if not exclusively, by merchants for the purpose of displaying dog harness and other dog furnishings.

Mr. Schoemann of the importing firm testified that he had never sold the dogs to any person dealing in toys and that he usually gave them away to a purchaser who bought dog harness valued at $100 or more; that he had sold some of them outright to persons who were not his dog-harness customers, but who wanted them for the purpose of displaying dog harness bought elsewhere.

The article of importation is before us. It is about 14 inches long and 12 inches high, white, with appropriately marked dark spots, and is an almost exact and faithful reproduction of a fox terrier. The coat or hair of the dog is composed of some kind of cotton cloth which simulates the sleek coat of the black and white fox terrier.

Mr. Schoemann also testified that he not only sold and gave away these display dogs for the sole purpose of displaying dog furnishings but that he used them himself in displaying dog furnishings and had seen them in hundreds of places throughout the United States in use as display dogs.

Mr. Joseph L. Dooley on behalf of the importer also testified that he was in the dog-furnishing business and had been for 30 years; that he was familiar with Exhibit 1 and similar dogs and that he had used dogs like Exhibit 1 for display purposes, and had seen them used for the same purpose, dressed with collars and harness, in the windows of department stores and sporting-goods stores which sell dog furnishings; that he had bought dogs of this character from Schoemann & Mayer, importers, and that he had given a dozen or a dozen and a half of these dogs away.

As against this testimony the Government introduced a Mr. Schondelmeier, who testified, among other things, that he was a toy buyer and toy seller who bought and sold in retail and wholesale quantities, and handled all sorts of stuffed papier-mâché animals which were, in many instances, as "carefully representative of a dog" as Exhibit 1, and made of practically the same material; that there was

in 1922 a class of merchandise at wholesale which was commercially considered as toys and that that was a definite, uniform, and general class; that the term "toy" was known throughout the United States and that Exhibit 1 was included within the class; that he had seen articles like Exhibit 1 used by children and that they played with them; that this kind of merchandise was usually sold to the mother of the family; that the dogs he bought and sold were like Exhibit 1 in form, appearance, and material; that he could not say but what the material in some of them might be a little bit better or cheaper than others and that he retailed them at from 25 cents apiece up—as high as $2.50 or $3. He expressed himself as not being certain about the price he received.

One Arnold E. Kegelman testified to substantially the same facts as were testified to by Mr. Schondelmeier.

The court below, in its decision by Justice Sullivan, held that the importation was not a toy under the definition of a toy in the case of *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, and said:

In view of the very positive testimony of Messrs. Schoemann and Dooley that this merchandise has a practical use, and being without samples of the competing merchandise, we can not attach weight to the testimony as to commercial designation.

The court, therefore, rejected the proffered commercial proof as not showing that the importation was a toy within the commercial understanding.

The commercial testimony is not only subject to the objection to which the lower court has referred, but, in our view, falls short of meeting the requirements of the law for other reasons, all of which need not be pointed out here. We have frequently indicated the character of proof which ought to be required to show commercial designation in tariff classification. Suffice it to say that the requirements are not met by testimony, as in the case at bar, to the effect that toys belong to a class of merchandise sold at wholesale in 1922 which was commercially considered as toys, definitely and uniformly, and that the papier-mâché dog belonged to that class.

In a case of this character where it is claimed that the commercial meaning of a term differs from its common meaning, the fact to be elicited from the witness is how the article is designated, named, or called in the trade. If it is not called, designated, or named a toy, how could a commercial designation of "toy" be established?

The shortcoming of this character of proof and its lack of probative effect was, we think, most aptly illustrated in this court recently by a colloquy which occurred between a lawyer and a member of the court, when this same phase of proof of commercial designation was under consideration. Pointing to a gold finger ring which the

lawyer was using in illustrating what jewelry meant commercially, the judge asked: "Why do you not ask him what that article is called in the trade." The lawyer replied: "The trouble with that kind of question is, he would answer, 'It is called a ring.' "

It seems plain that if, in the trade, it was always called a ring and designated as a ring, and that it was not called or designated as jewelry, the article had no commercial designation as jewelry. If the witness never knew of its being called jewelry but had always heard it called a ring, certainly his testimony as to commercial designation of the term "jewelry" would have no probative value.

Following this line of reasoning in the instant case, if the witness had been asked, "What is this papier-mâché dog called?" he would probably have answered, "A papier-mâché dog," or "cotton-cloth dog," or "dog." If he had replied that it was called a toy, abundant opportunity for cross-examination as to where and when he had heard it spoken of or designated as a toy would have been afforded, which might have elicited the fact that he had never heard it called a toy but that from his own definition of a toy he regarded it as such.

In the *Illfelder* case, *supra*, the late Judge Smith, speaking for the court, said:

> In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

The papier-mâché dog at bar is reasonably fitted for, and is reasonably capable of, a purpose other than the amusement of children and is not essentially a plaything. It is capable of use and is used for a practical purpose other than the amusement of children. Its use for a practical purpose is a substantial and not a fugitive one. In the common sense, therefore, it is not a toy. The Government has failed to prove that it is known and designated by the trade generally as a toy.

The finding of the court below that the goods should have been classified as manufactures in chief value of cotton, and dutiable at 40 per centum ad valorem under paragraph 921 is correct and its judgment is *affirmed*.

HATFIELD, Judge, concurs in the conclusion.