UNITED STATES *v.* LOUIS WOLF & Co. (No. 4161) [1]

United States Court of Customs and Patent Appeals, December 5, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*William J. Vitale*, special attorney, of counsel), for the United States.

*Eugene F. Blauvelt* for appellee.

[Oral argument October 5, 1938, by Mr. Vitale and Mr. Blauvelt]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The imported merchandise involved in this appeal was invoiced as "Microscope set" and was by the Collectors of Customs at the

[1] C. A. D. 23.

ports of New York and Boston, assessed with duty at the rate of 70 per centum ad valorem under paragraph 1513, Tariff Act of 1930, as toys chiefly used for the amusement of children.

Importer protested the said classification and assessment of duty, and among the claims made is the one sustained by the trial court and relied upon here that the merchandise should have been classified under paragraph 228 (b) of said act as microscopes and mountings therefor at 45 per centum ad valorem.

As a part of the microscope sets there were contained in the importation glass slides, tweezers, a medicine dropper, a needle or pointer, a test tube, a bottle for specimens, a magnifying glass, cover glasses, lens tissue, a glass rod, cotton, a scalpel or small knife, forceps, scissors, etc., which were shown to be necessary for use with the microscope. They were all equipment for use with the microscope. The sets were classified as entireties as toys, and no issue was raised in the trial court or is raised here as to the whole set not being an entirety.

The United States Customs Court, First Division, sustained the protests of the importer and held the involved merchandise to be microscopes and mountings therefor. There were other goods contained in the entries which were mentioned in the protests but which are not involved in this appeal. From the judgment of the trial court the Government has appealed here.

The material portions of the competing paragraphs follow:

PAR. 228  *  *  *

(b)  *  *  *  microscopes, all optical instruments, frames, and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 1513  *  *  *  and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

At the trial there were introduced Exhibits 1, 2, and 3, which consist of samples of some of the involved microscope sets, and Illustrative Exhibit A, which was introduced to represent another of the microscope sets involved in the importation. The four microscope sets contain substantially the same accessories, and the microscopes and accessories differ chiefly in size.

The largest of the exhibits is in the usual form of a laboratory microscope, except that it does not contain some of the specialized features or parts for bringing about certain results necessary in regular scientific laboratory work. The instruments all contain an eyepiece in the usual form which may be lowered or raised, in three of the exhibits, without a rack and pinion, while in one of the exhibits there

is the rack and pinion instead of the ordinary sliding method of raising and lowering the eyepiece. Each contains a stage or platform (with an aperture in the center) upon which is put the specimen to be examined, together with clasps to hold the specimen to the platform. Below the aperture, in the center of the stage, is a swivel mirror so arranged that it may be turned in different ways to reflect light upon the specimen on the glass slide on the stage. The chief component of the instrument seems to be a black, rough-finished metal, probably iron. The sliding portion containing the magnifying elements is apparently composed chiefly of brass. The record shows the instruments to have a magnifying strength of from 20- to 60-power. There is nothing to show the price at which these microscope sets are sold in this country.

On the subject of the character and use of the merchandise, three witnesses testified for the importer and four for the Government. As to the evidence, it is unnecessary here to recapitulate all that has been stated in great detail in the opinion of the trial court. It sufficiently appears from the evidence as a whole, and it is not disputed, that these instruments are chiefly used by children from twelve to sixteen years of age. They are used, according to the testimony of the various witnesses, for home study and in the examination of various objects such as hair, string, or the like, and botanical specimens.

One of the importer's witnesses, Ruth Schaeffer, testified that she was a laboratory technician and was familiar with all the parts and equipment of microscopes; that she was familiar with the imported merchandise and had been for about ten years last past; that Exhibit 1 is about 30-power, Exhibits 2 and 3 about 20-power, and Illustrative Exhibit A about 60-power; that she had seen instruments like these exhibits used by children eleven or twelve years of age in the study of specimens, and that small children of about twelve, or upward, could use them in their biological studies in school; that they were practical articles; that she might be able to make a count of blood cells (to tell if they were red cells or white cells) by the use of articles like Illustrative Exhibit A; and that a regular microscope has a range "from about 100 times" up to approximately 400 or 500. The witness explained that a laboratory instrument had magnification range which these did not have; that in ordinary microscopes, one is able to control the illumination and that it could be controlled "somewhat" in Exhibits 1, 2, 3, and 4; that the light could not be cut off, but the articles could be turned away from the light; and that her nephew used an article something like Exhibit 1 with more "interest than amusement."

A schoolboy testified to the effect that he used articles like the exhibits for home work.

One of the Government's witnesses testified that he had seen children use articles like the exhibits "more for the mystery that is attached to it than what they might be able to see" and that they appeared to be deriving amusement from the use of the articles.

After reviewing the evidence, the trial court had the following to say:

From an inspection of the samples, which are potent witnesses on behalf of the plaintiffs, and the weight of the testimony, we are of opinion these articles are not "chiefly used for the amusement of children," and therefore are not toys. We think, paraphrasing what was said by the appellate court in *Wolf* v. *United States*, 19 C. C. P. A. 132, T. D. 45258, that these are "junior editions" of microscopes used in laboratories, etc., by adults, "that is, a small article designed for a small person," and that this is true even though these microscopes and accessories "may be chiefly, if not almost exclusively, used by children." We cite the holding in that case and the authorities referred to therein to support this conclusion.

We are in agreement with the conclusion reached by the trial court. Like it, we are impressed by the appearance of the articles. Their construction is more substantial than that which ordinarily is found in toys. They are not expensive articles and yet they are not the character of articles which are ordinarily regarded as toys or playthings. From the record as a whole and the exhibits, we conclude that these articles are used by children to whom more expensive and elaborate instruments would not be entrusted. Furthermore, the magnification required by children of this age does not call for a more elaborate instrument.

Not everything a child uses is a plaything, even though he may get amusement from it. There are a great many small, cheap articles used by children that under no stretch of the imagination could be regarded as toys. The mere fact that an article is smaller, cheaper, and less elaborate than a larger one, does not necessarily require that it be regarded as a toy.

In *Louis Wolf & Co. et al.* v. *United States*, 19 C. C. P. A. ( Customs) 132, T. D. 45258, this court had before it small, cheaply constructed phonographs which were classified by the collector as toys. They sold for $1 each. The illustrative exhibits in the case sold for from $2 to $7.50. They also were small, cheap phonographs, differing in size, workmanship, and expense of material. The tone of the instruments improved in proportion to the increased price. The articles there at bar wound in the same manner as larger phonographs and played some of the records that could be played on the larger machines. They were sold in department stores, music stores, and other kinds of stores, ofttimes in the toy departments. In holding the importation to be phonographs rather than toys, we said:

We conclude upon the record before us that the merchandise involved is a phonograph. It may be a poor one, but, as far as we are advised, it lacks no essential element necessary to entitle it to be regarded as such for tariff purposes. We do not think it is a plaything such as was referred to in the *Illfelder* case, *supra*.

Although it may be chiefly, if not almost exclusively, used by children, it would seem to fall into the class of articles referred to in *United States* v. *Field,* 12 Ct. Cust. Appls. 543, T. D. 40738, as "junior editions," that is, a small article designed for a small person. To hold the article at bar a toy would, to our way of thinking, necessitate the holding of children's small, substantially built bicycles to be toys, since they can only be used by children. There are toy bicycles which are readily distinguishable from small bicycles used by children and which are not toys.

The facts in the *Wolf & Co.* case, *supra,* seem to be quite comparable to those at bar.

In *United States* v. *Field & Co.*, 12 Ct. Cust. Appls. 543, T. D. 40738, this court had before it sets of tenpins consisting of ten wooden pins and three wooden balls. The pins were 6 inches in height and from 1½ to 2 inches in width at the base; the balls were about 3 inches in diameter. In the same importation were other similar sets of ninepins. The goods were used by children in playing games known as "tenpins" or "ninepins." The record showed that articles of larger diameter were used by adults for the same purpose. In holding the articles not to be toys, we there said:

> The tenpins and ninepins are used in the playing of a game. No doubt amusement would be afforded children in the playing of the game of tenpins or ninepins, but is the establishment of that fact sufficient to require classification of these articles as toys? We think not.

> It is apparent from the description of the dimensions of the pins and balls that the articles are not mere playthings. They are of sufficient size to require that they be used in the playing of the game for which they were designed in order to afford amusement to children. These articles may be said, figuratively speaking, to be "junior editions" of like articles used by adults in the playing of the game of "tenpins" or "ninepins," rather than miniatures of such articles, so small as to be unfitted for use as ninepins or tenpins, and intended to be used and actually used only as mere playthings for the amusement of children.

Both the foregoing decisions involved a consideration of what should be regarded as a toy under paragraph 1414, Tariff Act of 1922. It is the contention of the Government that the *Wolf & Co.* case, *supra,* is not in point since the Tariff Act of 1922 was less comprehensive than the paragraph of the Tariff Act of 1930 now under consideration. Paragraph 1414 of the Tariff Act of 1922, in its material parts, read as follows:

> PAR. 1414. Dolls, * * * and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for * * *.

Paragraph 1513, Tariff Act of 1930, among other provisions, contains the following definition of the term "toy":

> * * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. * * *

It is the Government's contention that even if the articles at bar were shown to be used for mental development or physical exercise,

nevertheless they would be toys. The difficulty with that position is that they would also have to be used chiefly for the *amusement* of children before they would be toys. We think that the use of the articles at bar is not one of amusement in the sense that that term is used in paragraph 1513. Moreover, it is obvious that the instruments at bar are not essentially playthings.

Up to the time of the passage of paragraph 1513, *supra*, toys had not been defined in the various toy paragraphs of the tariff statutes. However, in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, this court laid down the rule as to what constitutes a toy as follows:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. * * *

Numerous decisions of this court and the trial court rendered subsequent to the *Illfelder* case, *supra*, held that if the involved article was fit for any other reasonable use (including physical exercise or for mental development) than as a toy, it was not essentially a plaything, and therefore was not a toy. See *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 260, T. D. 41879.

When the Tariff Act of 1930 was being prepared, the United States Tariff Commission in the Summary of Tariff Information, 1929, at pp. 1953 *et seq.*, called the attention of Congress to many of such decisions and pointed out that, under them, goods which had theretofore been regarded as toys had been held to be articles other than toys, on the ground that they could be used for purposes other than for the amusement of children. When the bill which became the Tariff Act of 1930 was before the Senate, the toy paragraph was amended, by the adoption of a committee amendment, so as to include the definition of a toy as it appears in the act. The member of the committee, who undertook to explain for the committee the purpose of the amendment, called attention to the decision of this court in the *Illfelder* case, *supra*, and other decisions, including those of the United States Customs Court, and stated (72 Cong. Rec. 2036):

It would therefore seem that games are not toys in keeping with the intent of the framers of past tariff bills. The decision is also contrary to the long-continued practice of the Treasury Department in classifying games as toys. A proper definition is vital to the toy industry.

This amendment, I will say to the Senator from Massachusetts, is provided in order to clear up the situation which is a result of the Treasury decisions. * * *

In the Report of the Senate Committee on Finance on the bill which became the Tariff Act of 1930, in commenting on paragraph 1513, the following is found:

The term "toy" is defined with the intention of insuring classification under this paragraph of all articles chiefly used for the amusement of children. * * *

It would seem to follow that it was the intent of the framers of the paragraph to require merchandise to be classed as toys if it was chiefly used for the *amusement* of children even though it was also suitable and used for "physical exercise or for mental development." The merchandise at bar unquestionably is suitable for mental development, but under the definition of the term "toy" as modified by the legislature, this fact does not take it out of the toy paragraph as long as the article is chiefly used for the amusement of children. The correct decision of this case, therefore, depends upon the proper finding as to whether or not the microscope sets at bar are articles chiefly used for the *amusement* of children.

From the evidence in the case and the exhibits before us we think the merchandise at bar is not chiefly used for the *amusement* of children because, as we have hereinbefore stated, the interest which children display in the use of these microscope sets is not the character of "amusement" which a child gets from a toy or from an article which is essentially a plaything.

On this phase of the case, the decisions of this court in *United States* v. *Calhoun, Robbins & Co.*, 21 C. C. P. A. (Customs) 167, T. D. 46495, and *United States* v. *F. W. Woolworth Co.*, 24 C. C. P. A. (Customs) 338, T. D. 48770, are very much in point.

In the *Calhoun, Robbins & Co.* case, *supra*, where a so-called "work box," containing a knitting frame and accessories for knitting various articles, was under consideration, this court said:

We are not unmindful of the fact that the stipulation states that the merchandise is "chiefly used *by* children over six years of age." (Italics ours.) In construing the language of the toy paragraph, *supra*, however, its full import is not determined in the ascertainment of *by* whom an article is chiefly used; it is necessary also to consider *for* what purpose it is used. So far as the statute is concerned, an article might be a toy without ever being actually used by a child, but, to be one, it must be chiefly used *for* the amusement of children.

It may be that a certain amusement is derived by a child from its use of the articles at issue, but, whether used by a child or by an adult, the thing produced, in its normal and intelligent use, is an article of utility, and it seems to us that, upon the whole record in the case, the use in production of such an article—the knitted string—outweighs what we think may be designated as the probable incidental amusement.

In the *Woolworth* case, *supra*, we said:

The rule so stated [referring to the language last-above quoted], of course, is applicable in the instant case. A mere showing that the balls are chiefly used *by* children does not of itself mean that they should be classified as toys. The paragraph requires consideration of the purpose for which they are chiefly used, and that purpose must be "chiefly * * * for the amusement of children," if they are to be held classifiable as toys. The fact that a particular article may be used chiefly by children does not render it a toy. The statute requires that the use be chiefly for the amusement of children. If chief use for the purpose of amusement be properly deducible from all the facts and circumstances of record, then it would be immaterial that the balls are suitable also for physical exercise.

Upon the instant record, it is our view that the microscope sets at bar are not chiefly used for the amusement of children and are not articles of the character intended to be taxed at the rate of 70 per centum duty under the toy paragraph for the protection of the American toy industry. See Summary of Tariff Information, 1929, p. 1949.

In view of the above considerations and for the reasons hereinbefore stated, the judgment of the United States Customs Court holding the imported merchandise to be dutiable under paragraph 228 (b), Tariff Act of 1930, is *affirmed*.

JACKSON, Judge, dissents.