(C. D. 1376)

## HARRY GRUNBERG v. UNITED STATES

United States Customs Court, First Division

(Decided December 5, 1951)

*Barnes, Richardson & Colburn (Edward N. Glad* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: The merchandise involved in these protests consists of dark red sponge rubber balls 2½ inches in diameter. They were assessed for duty at 70 per centum ad valorem under the provisions of paragraph 1513, Tariff Act of 1930, as toys. They are claimed to be properly dutiable at 30 per centum ad valorem under paragraph 1502 as "all other balls * * * primarily designed for use in physical exercise * * * not specially provided for."

The involved paragraphs, so far as pertinent, read as follows:

PAR. 1513. * * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

PAR. 1502. * * * baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), * * * all the foregoing, not specially provided for, 30 per centum ad valorem; * * *.

The record covers approximately 100 pages of testimony. The plaintiff introduced the testimony of two witnesses. One is the importer in the present case. The other witness is a high school student. The Government called six witnesses. Of these, four are connected with domestic manufacturers of similar merchandise. The other two witnesses were recreation and playground directors connected with a housing project in New York City.

As is usual in similar situations, the testimony is conflicting. The plaintiff is financially interested in the outcome of this litigation. Four of the Government's witnesses can be said to be interested in the question raised, as they manufacture and sell sponge rubber balls in competition with the imported product. The presumption of correctness attaching to the collector's classification implies that he found the imported sponge rubber balls to be "chiefly used for the amusement of children." The burden is on the plaintiff to overcome this presumption and to affirmatively establish that they were "primarily designed for use in physical exercise." The determinative test is not whether these balls are chiefly used by children. The test is the *purpose* for which they are so used. To sustain the classification as toys, these balls must be found to be chiefly used for the amusement of children.

As hereinbefore stated, the testimony is conflicting. Plaintiff's witnesses state that this type of ball is not chiefly used to amuse children, but is used by children and those of high school age, and older, for physical exercise. Defendant's witnesses, on the other hand, stated that they were toys and were chiefly used to amuse children. At least one of defendant's witnesses based his opinion not on seeing children use them, but because he shipped them to toy counters.

We have before us a sample of the imported product. It is a dark red or maroon-colored ball, 2½ inches in diameter. Being of sponge rubber (not hollow), it is quite heavy. Samples are potent witnesses and the sample before us is particularly so. This is not a small, light, flimsy ball which might be used by small children to amuse themselves. Children have been defined as those up to the age of puberty, which is 14 years for boys and 12 for girls. While there is no definite age at which children lose their interest in toys, it can be said that such interest is to a great degree confined to the very young child. In *United States* v. *Frederick Warne & Co.*, 18 C. C. P. A. (Customs) 380, T. D. 44638, the court commented (p. 385):

* * * We do not think that Congress used the word "children" as meaning all children up to the age when adolescence or youth begins, as contended for by the Government, but intended to include only children of a tender age.

While the above language was used in connection with a case involving "Books * * * for children's use" (paragraph 1310, Tariff Act of .1922) it would seem to apply with equal force to the present situation and to the phrase "chiefly used for the amusement of children." In *United States* v. *Abercrombie & Fitch Co.*, 20 C. C. P. A. (Customs) 267, T. D. 46060, the court said (p. 271):

* * * We are constrained to hold that Congress, by its use of the phrase "used for the amusement of children," did not mean for the use of grown-up children or youths, but children who, by reason of youth and lack of mental development, were incapable of great mental exercise in deriving amusement.

In *United States* v. *State Forwarding & Shipping Co.*, 13 Ct. Cust. Appls. 287, T. D. 41216, in discussing the merchandise there before the court, a light weight, colored ball of straw in a net cover, the court said as to the provision for balls (p. 291):

* * * We do not think it [Congress] had in mind such balls or equipment as were primarily intended, or designed merely as playthings for children, or those that are reasonably fitted only for use as amusing playthings.

In *Geo. S. Bush & Co. (Inc.)* v. *United States*, 53 Treas. Dec. 44, T. D. 42546, hollow rubber balls, 3¾ inches in diameter, "fancifully colored and striped, and two pictures of small children at play are printed thereon in colors" were before the court. In holding them properly dutiable under the ball paragraph 1402 (1922 act), the court said (p. 46):

There are two reasons why these balls are dutiable under paragraph 1402: First, they are used in physical exercise; and second, they are eo nomine mentioned as "all other balls" in the paragraph.

It appears from this record that these balls are used in physical exercise by children, youths, and adults. As they are extensively so used for such purposes, we should not infer that they were not primarily designed for such use. (*United States* v. *F. W. Woolworth Co.*, 16 Ct. Cust. Appls. 421, T. D. 43136.) The size and weight of these balls would seem to exclude their use by the toy-age children and limit their use to those children who had reached the age and physical development where their use in games and more strenuous sport would be indicated. We are of opinion that these balls are much in the same category as baseballs and tennis balls which, while frequently used by boys under 14 years of age, are not looked upon as toys.

It appears to us that the balls now before us are not designed or used chiefly for the amusement of children. By their very nature and construction they are reasonably fitted for other purposes.

The ball paragraph (1502) is not limited to balls used by adults and was not so intended. It would seem as important to provide for exercise for children as for adults. Even if it were shown that these balls

are chiefly used by children rather than by adults, this fact alone would not determine their classification as toys.

We are mindful of the language changes made in paragraphs 1502 and 1513 of the present act. In the 1922 act, paragraph 1402, the ball paragraph, read "* * * all other balls * * * designed for use in physical exercise or in any indoor or outdoor game or sport * * *." The corresponding paragraph (1502) in the 1930 act, reads "* * * primarily designed for use in physical exercise (whether or not such exercise involves the element of sport) * * *." The toy paragraph in the 1922 act (paragraph 1414) read "* * * and all other toys * * * not specially provided for * * *." The corresponding paragraph (1513) in the 1930 act uses the same language, but adds the oft-quoted definition of toys:

* * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development.

In addition, new limitations were added by use of the following language:

* * * The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

While the word "primarily" as covering "designed for use in physical exercise" has been added to the 1930 act (paragraph 1502), we attach no special significance to this wording. The definition of toys, appearing for the first time in paragraph 1513 of the Tariff Act of 1930, clarifies and makes clear what the Congress intended by the use of the term "toy." However, this definition simply gives legislative approval to the definition set forth by our appellate court in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115 (p. 111):

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. [Italics quoted.]

The definition in the present statute does not materially differ from the court's understanding of what a toy was back in 1910 under the Tariff Act of 1897, as set forth above. The court, in the *Illfelder* case, *supra*, continued:

* * * Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

Despite the changes in the wording of the toy paragraph, the above statement by our appellate court is still applicable. While

the balls here before us may be used to amuse children, they are also used by those beyond the age of children and by adults. The appearance, weight, and stated use of these particular sponge rubber balls give support to plaintiff's claim that they are not toys.

In *F. W. Woolworth Co.* v. *United States*, 53 Treas. Dec. 1038, Abstract 6133, Judge Sullivan (in the full opinion) said:

* * * It seems to us from reading the paragraph [1402, Tariff Act of 1922] that almost every conceivable form of ball, excepting such as may be played with by a tiny baby in its cradle or baby carriage, is covered by paragraph 1402. It seems impossible that any ball, except such as played with by a baby, could be designed for any other use than in indoor or outdoor games or sport.

The decision in the above case was affirmed in *United States* v. *F. W. Woolworth Co.*, 16 Ct. Cust. Appls. 421, T. D. 43136.

We are of opinion that these sponge rubber balls do not come within the definition of toys as set forth in paragraph 1513. While the testimony in the record is conflicting, the samples and the weight of reason indicate that these are just the type of balls contemplated by the Congress when it incorporated in paragraph 1502 the provision for "all other balls * * * primarily designed for use in physical exercise * * * not specially provided for." Some balls are otherwise provided for in the 1930 act, particularly antifriction and metal balls (paragraph 321), bagatelle, billiard, and pool balls (paragraph 1512). The balls here before us are clearly designed for physical exercise. Some of the testimony is to the effect that these balls are used by children at the beach to skip on the water. It would take more skill than that possessed by the average young child to perform this act, and few children of tender years would be permitted in the water to retrieve the ball. The entire record indicates that when used by children, these balls are used by the older ones and not by the little ones. In *United States* v. *F. W. Woolworth Co.*, 24 C. C. P. A. (Customs) 338, T. D. 48770, involving rubber balls imported under the 1930 act, Judge Garrett, writing for the court, said (p. 342):

So, in the final analysis, the issue here is, as it has been in the numerous other decided cases referred to herein, whether the balls at issue are chiefly used for the amusement of children or were primarily designed for physical exercise. If primarily designed for physical exercise, it is not material who the chief users may be, and being *eo nomine* provided for in paragraph 1502, *supra*, they are more specifically covered there than in the broad designation of "all other toys" appearing in paragraph 1513, *supra*.

And later, at page 342:

It is manifest that the trial court gave much weight to the exhibits themselves and, in our opinion, this was eminently proper. Many of the Government witnesses in testifying that they had seen the balls used chiefly by children added their opinion that they were so used for the amusement of the children. This latter is in the nature of opinion evidence and gives us but little aid. It seems to

us to have been a deduction of purpose from the ages of the persons whom the witnesses had seen using the articles, rather than a deduction based upon the characteristics of the articles themselves.

The size, appearance, weight, and degree of bounce of this particular ball persuade us that it was primarily designed for physical exercise and intended to be used by older children and youths rather than by little ones. That is to say, by those old enough to be more interested in strenuous play or exercise than in toys. The little one of toy age and size would find little amusement in attempting to handle the ball here before us.

On this entire record, we find these balls not to be toys, as assessed, but to be properly dutiable at the rate of 30 per centum ad valorem under the provisions of paragraph 1502, Tariff Act of 1930, for "all other balls * * * primarily designed for use in physical exercise * * *," as claimed. The protests herein are sustained and judgment will issue accordingly.