(C. D. 1426)

B. Shackman & Co.
S. Stern Henry & Co. } *v.* United States

United States Customs Court, Third Division

(Decided June 3, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* and *Amos B. Sharretts* of counsel) for the plaintiffs.

*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This action involves the classification of 240 dozen tea sets imported from Nagoya, Japan. Each set is composed of a chinaware tray about 3½ inches in diameter, two cups and saucers, a creamer, and a covered sugar, as well as a teapot with cover. The teapot is the largest piece, being about 1¾ inches high and 1½ inches in diameter. The creamer and sugar are approximately an inch high and a little over a half inch in diameter. The cups are a half inch high and seven-eighths of an inch in diameter at the top, the saucers being 1¼ inches in diameter. The items are of such size as will permit them all to rest on the tray.

Duty was assessed thereon at the rate of 70 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as decorated chinaware, not tableware. The plaintiffs claim that the articles consist of toys, properly dutiable at the rate of 35 per centum ad valorem under paragraph 1513, as amended by the Mexican Trade Agreement, T. D. 50797.

At the trial a sample of the imported chinaware sets was admitted in evidence as plaintiffs' collective exhibit 1. Also, a sample of a regular toy tea set was admitted on behalf of the Government as illustrative collective exhibit A.

A salesman of the plaintiffs testified that the importer dealt in toys and novelties. The witness traveled over the entire United States with samples, calling upon retailers and toy outlets. He sold miniature tea sets like collective exhibit 1 in wholesale lots of a couple of hundred gross to toy retailers from Pittsburgh to the west coast, including Los Angeles, San Francisco, Portland, Oreg., Seattle, Spokane, Salt Lake City, Denver, Chicago, Cleveland, Detroit, and Pittsburgh. Besides selling such merchandise to toy retail establishments, he had observed it in use in the homes of friends in Seattle, Spokane, Cleveland, and Chicago. From his observation, he testified that the tea sets were used by children between the ages of 5 and 12 in their play, wherein they made believe that they were drinking milk, coffee, and tea "the way their daddy and mother did." In that respect, the witness testified, on cross-examination, as follows:

X Q. You mean they poured milk in these cups?—A. No, just picked them up and brought it over to the doll that was at a little table.

X Q. They didn't fill the cups with milk or the teapot or bowl?—A. No, they didn't fill them.

X Q. And that is exactly the same way you observed them being used in the other places?—A. Yes, none of the children had them filled.

He also admitted that he had seen such tea sets used as collectors' items and on knickknack shelves. In his opinion, approximately 90 per centum of such articles was used by children.

Joseph Riis, who operated a retail store in New York City, selling only toys and kindred lines such as sport goods, dolls, and articles of that type, testified that he was familiar with articles such as collective exhibit 1 and he had sold them before the war. He also had seen such articles used by his own little child; that in such use, she sits at a table with her dolls and makes believe that she is feeding the doll. He had also seen them used in the same manner by other little girls and had never observed such articles being used for any other purpose.

On cross-examination, he testified as to the purpose for which he sold the items, as follows:

X Q. Well, you said you sold kindred items, do you sell items used as ornaments?—A. We sell all our items for dollhouses, that is primarily what we sell them for.

X Q. You said also that you sold sporting goods.—A. You are referring to novelties?

X Q. You said—— A. All items we sell of this calibre we only sell for dollhouses.

X Q. I am not only asking you about items like this one, I am also asking you about others?—A. Oh, yes.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

X Q. Ornaments?—A. No, ornaments; you mean Christmas ornaments?

X Q. No, ornaments; articles used on knickknack shelves?—A. No.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

X Q. Then you do sell other kinds of chinaware?—A. We carry all kindred items like this for dollhouses.

X Q. Do you sell other items other than Exhibit #1.—A. Yes, little pictures, little dishes, smaller than these; vases; we have a specialty of selling hundreds of items for dollhouses and children.

X Q. You sell dishes larger than those?—A. Yes, regular play dishes.

The witness admitted that he also sold play dishes similar to illustrative collective exhibit A and that he had a knickknack shelf in his home. He testified, however, that he would not use anything like collective exhibit 1 on it. He used real china such as Dresden, and if he put on it something which was for a child to play with, his wife would throw it out as not being artistic. Although the witness admitted that people do use inexpensive articles upon knickknack shelves, he insisted that the articles in question are sold in his store only for doll houses.

The Government's only witness was the United States examiner who advisorily classified the items. The witness testified that he had seen similar articles used in homes on knickknack shelves, including his own home; that he had never seen a child playing with articles like collective exhibit 1; and that persons in whose homes he had observed sets used on knickknack shelves had children under 14 years of age, but they were not permitted to play with the sets.

The witness admitted that the value of the sets was less than 15 cents.

The question at issue is whether or not these chinaware miniature tea sets are of such character as are used chiefly for the amusement of children. If so used, they are removed from the chinaware paragraph and brought specially within the provisions of the toy paragraph. The pertinent portions of the paragraphs of the law in question provide as follows:

PAR. 1513.  *  *  *  and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

Paragraph 1513, as amended by the trade agreement with Mexico, T. D. 50797, further provides:

Toys, and parts of toys, not specially provided for, wholly or in chief value of china, porcelain, parian, bisque, earthenware, or stoneware, 35% ad valorem.

PAR. 212. China, porcelain, and other vitrified wares,  *  *  *  and all other articles composed wholly or in chief value of such ware,  *  *  *; painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem.  *  *  *

In the case of *United States* v. *Louis Wolf & Co.*, 26 C. C. P. A. 243, C. A. D. 23, the appellate court reviewed the legislative history of the toy paragraph and stated in its decision as follows:

Up to the time of the passage of paragraph 1513, *supra*, toys had not been defined in the various toy paragraphs of the tariff statutes. However, in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, this court laid down the rule as to what constitutes a toy as follows:

> In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose.  *  *  *

Numerous decisions of this court and the trial court rendered subsequent to the *Illfelder* case, *supra*, held that if the involved article was fit for any other reasonable use (including physical exercise or for mental development) than as a toy, it was not essentially a plaything, and therefore was not a toy. See *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 260, T. D. 41879.

When the Tariff Act of 1930 was being prepared, the United States Tariff Commission in the Summary of Tariff Information, 1929, at pp. 1953 *et seq.*, called the attention of Congress to many of such decisions and pointed out that, under them, goods which had theretofore been regarded as toys had been held to be articles other than toys, on the ground that they could be used for purposes other than for the amusement of children. When the bill which became the Tariff Act of 1930 was before the Senate, the toy paragraph was amended, by the adoption of a committee amendment, so as to include the definition of a toy as it appears in the act. The member of the committee, who undertook to explain for the committee the purpose of the amendment, called attention to the decision of this

court in the *Illfelder* case, *supra*, and other decisions, including those of the United States Customs Court, and stated (72 Cong. Rec. 2036):

> It would therefore seem that games are not toys in keeping with the intent of the framers of past tariff bills. The decision is also contrary to the long-continued practice of the Treasury Department in classifying games as toys. A proper definition is vital to the toy industry.
>
> This amendment, I will say to the Senator from Massachusetts, is provided in order to clear up the situation which is a result of the Treasury decisions. * * *

In the Report of the Senate Committee on Finance on the bill which became the Tariff Act of 1930, in commenting on paragraph 1513, the following is found:

> The term "toy" is defined with the intention of insuring classification under this paragraph of all articles chiefly used for the amusement of children. * * *

It would ,seem to follow that it was the intent of the framers of the paragraph to require merchandise to be classed as toys if it was chiefly used for the *amusement* of children even though it was also suitable and used for "physical exercise or for mental development." The merchandise at bar unquestionably is suitable for mental development, but under the definition of the term "toy" as modified by the legislature, this fact does not take it out of the toy paragraph as long as the article is chiefly used for the amusement of children. The correct decision of this case, therefore, depends upon the proper finding as to whether or not the microscope sets at bar are articles chiefly used for the *amusement* of children. [Italics quoted.]

The evidence produced by the plaintiffs clearly supports their contention that the miniature tea sets in questions are used chiefly for the amusement of children at their play or in their doll houses. Both of plaintiffs' witnesses had observed such sets being used by children in making believe that they were serving tea and feeding their dolls. One of the witnesses had observed such use by children from the west coast to Pittsburgh while traveling as a salesman and selling such items to toy departments. The other witness sold the articles exclusively for use in doll houses and had observed his own little child making believe that she was feeding her dolls from such a set. Although admitting that such sets may be used on knickknack shelves and are so used, they both were of the opinion that they were not collectors' items and ordinarily would be regarded as too inexpensive for such use.

The Government relied solely upon the testimony of the examiner who had observed similar sets in the homes of his friends down on Long Island and in his own home, had never seen a child playing with articles like collective exhibit 1, and was of the opinion that such articles were used upon knickknack shelves exclusively.

As stated in the case of *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995, a sample of merchandise in a case involving whether or not an article was a toy was a very potent witness. Considering the evidence produced by the plaintiffs in the pending case, and observing the character of the articles in question,

we are of the opinion that the plaintiffs have established that such articles are chiefly used for the amusement of children. Had not these articles been used chiefly for the amusement of children, in the opinion of the court, it would have been an easy matter for the Government to establish otherwise.

For the reasons stated judgment will be entered in favor of the plaintiffs directing the collector to reliquidate the entry and assess duty, as claimed.