BEFORE THE FIRST DIVISION, AUGUST 21, 1957

**No. 61154.**—Naumes Forwarding Service v. United States, protest 217098–K/4891 (Chicago).

OLIVER, Chief Judge: This protest relates to merchandise described on the invoice as "Horseshoe Magnets," which the collector classified as toys, not

specially provided for, under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, carrying a duty assessment of 35 per centum ad valorem. Plaintiff claims that the articles are not toys and that they are properly classifiable as manufactures of metal, not specially provided for, under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 51802, carrying a duty assessment of 22½ per centum ad valorem.

To support its contention, plaintiff introduced the testimony of a partner in "Three Point Industries," the importing company. After stating that his company manufactures "automotive and hardware items," the witness added that the merchandise in question is the only merchandise he ever imported. He identified a sample of the articles in question (plaintiff's exhibit 1), which consists of a small, metal magnet, shaped like a horseshoe, approximately 2 inches long, and having attached thereto a metal bar (1⅛ inches in length) known as a "keeper," that is designed to keep "the magnet alive; otherwise the magnet has a tendency to gradually lose its strength." The upper half of the magnet is painted red; the lower portion has a coating producing a silvery gloss. The witness testified that he sells these magnets under the name "Lucky Horseshoe Magnet" and that they are sold on display boards, holding a dozen magnets and containing written "suggestions as to what they can be used for." The witness stated further that he "sold some" of the magnets in Chicago to three hardware jobbers; the remaining ones are still in his possession. Concerning the use of these magnets, the witness testified as follows (R. 6):

I have seen this article used in a home where a woman will keep it in a sewing machine for the purpose of picking up pins and needles; I have seen it used in a shop; it can be in a shop like a factory where they will drop a bolt or a nut or some metal piece and it will fall into some place that they can't reach in with their hand and they will drop this little magnet in with a string or wire and pick up this little piece of metal that was dropped. Those are uses I have actually seen.

On cross-examination, the witness stated that he "never played with a magnet like this when I was a child" but that he had seen a child play with a magnet.

Defendant introduced two witnesses. The customs examiner, who served in that capacity for 35 years at the port of New York, stated that he had seen a magnet like that in question used "by myself for the amusement of my own son approximately 15, 16 years ago, and more recently in Brooklyn for the amusement of children, my niece's children, approximately 3 to 6 years old." He produced a so-called "Toy Set" that he purchased in a store in New York City, which consists of a 2-inch horseshoe magnet and three flimsy metal shapes or figures, all of which are stapled to a display card, describing the merchandise as "AMERICAN MAGNET—ELECTRIC ACROBAT TOY SET" (defendant's illustrative exhibit A). The magnet included in the "Toy Set" appears to be substantially the same as the article in question, exhibit 1, supra.

Defendant's second witness stated that he is a civil engineer, employed as a sales engineer by the Indiana Steel Products Co. of Valparaiso, Ind., the world's largest manufacturer of magnets, that sells to all types of customers, including "General Electric, R. C. A., Westinghouse," as well as to toy manufacturers. The witness stated that his employer makes "approximately 40,000 different sizes and shapes" of magnets. Referring to the magnet in question (exhibit 1, supra), he stated that he had seen an article like it used "by children in a toy fishing game" and that it would not be used for commercial or industrial purposes because "it is not of a quality of material that could be used with any degree of dependability. It would become quickly demagnetized from any type of business, and it is not strong enough to be a good magnet." The witness testified that "the chief and only use" for the magnets in question would be in

a toy application, such as that displayed in the "Toy Set" (defendant's illustrative exhibit A, *supra*). He stated further that the merchandise in question "has no commercial use." Distinguishing between the magnet under consideration and magnets that are used in commerce and industry, the witness testified that this magnet, exhibit 1, *supra*, is a "formed magnet," made of strip steel that is just formed into horseshoe shape, and that magnets for industrial use are made of very high cobalt and nickel content and are cast to a specified shape and size.

At this point, mention should be made of the fundamental principle in customs law that the plaintiff in a classification case has the twofold burden of proving the correctness of the alleged claim, as well as showing that the collector's classification is wrong. *Joseph E. Seagram & Sons, Inc.* v. *United States*, 30 C. C. P. A. (Customs) 150, C. A. D. 227; *United States* v. *Enrique C. Lineiro*, 37 C. C. P. A. (Customs) 5, C. A. D. 410. It should be noted, also, that "the law is well settled that the classification by the collector and his official acts are presumptively correct" (*McKesson & Robbins, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 157, C. A. D. 77), and it is equally "well established that the collector is presumed to have found every fact to exist that was necessary to sustain his classification" (*E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. (Customs) 146, C. A. D. 75). Under those principles, the presumption of correctness attaching to the collector's action herein includes a finding by the classifying officer that the magnet in question is a "toy," within the tariff definition of the term, set forth in paragraph 1513 of the Tariff Act of 1930, as follows:

PAR. 1513. * * * As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. * * *

It will be observed that the criterion for classification of merchandise as a toy is that the article shall be "chiefly used for the amusement of children," a condition that is implicit in the collector's classification of the magnets involved herein.

On the record before us, plaintiff has not sustained its burden. The testimony of the importer, as it appears herein, concerning use of these magnets in a household to pick up pins and needles, or in a shop to pick up some "small metal piece" suggests occasional or incidental uses and is not impressive in showing chief use. On the other hand, defendant's testimony, coupled with an examination of the samples admitted herein, is persuasive of the correctness of the collector's classification. The preponderance in weight of the evidence before us supports the collector's classification of these magnets as toys.

The briefs of counsel for the respective parties cite several cases that involved small metal magnets, and in which classification of the merchandise as toys was involved. *Wiebusch & Hilger* v. *United States*, 29 Treas. Dec. 818, Abstract 39003; *J. Friedenberg & Co.* v. *United States*, 30 Treas. Dec. 41, Abstract 39035; *A. Strauss & Co.* v. *United States*, 32 Treas. Dec. 731, Abstract 40535; *B. Illfelder & Co. et al.* v. *United States*, 41 Treas. Dec. 516, Abstract 44757; *A. Strauss & Co. et al.* v. *United States*, 46 Treas. Dec. 418, T. D.' 40504; and *United States* v. *Strauss & Co.*, 13 Ct. Cust. Appls. 167, T. D. 41025. All of the cited cases arose under earlier tariff acts (either the Tariff Act of 1922 (paragraph 1414) or the Tariff Act of 1913 (paragraph 342)), which, unlike the Tariff Act of 1930 that controls the present issue, did not include a statutory definition of the term "toy." All of those cases followed the judicial pronouncement laid down in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, wherein it was held that a toy "is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose." [Italics quoted.] In the light of the statutory definition of the term "toy," paragraph 1513, *supra*, the judicial interpretation

enunciated in the *Illfelder* case, *supra*, has no influence in the classification of merchandise as a toy.

For all of the reasons hereinabove set forth, the protest is overruled and judgment will be rendered accordingly.