UNITED STATES *v.* GLOBE OVERSEAS CORPORATION (No. 2481) [1]

1. WITNESS, COMPETENCY—COMMERCIAL DESIGNATION.

   A witness who had never bought or sold, and was unfamiliar with the trade designation of, the imported articles or articles *like* them, is not qualified to testify as to their commercial designation by having dealt in articles to some extent *similar.*

2. RUBBER SPONGES, FANCIFULLY SHAPED—TOYS.

   Rubber sponges, used for bathing by children and adults, and made in the shape of animals and other things to add to their attractiveness and to amuse the children, are not toys under paragraph 1414, Tariff Act of 1922, because they are "reasonably capable of use for some practical purpose other than the amusement of children."—Quotation from *Illfelder* v. *United States,* 1 Ct. Cust. Appls. 109, T. D. 31115. The protest claim under paragraph 1439 as manufactures of india rubber not specially provided for was properly sustained.

[1] T. D. 40849.

## United States Court of Customs Appeals, April 14, 1925

APPEAL from Board of United States General Appraisers, G. A. 8867 (T. D. 40424)

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellee.

[Oral argument Mar. 26, 1925, by Mr. Hoppin and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal was invoiced as "novelty sponges." It was described by the appraiser as "novelty rubber sponges in the form of dogs, Santa Claus, clowns, etc., in the opinion of this office suitable only for the amusement of children." It was returned by the appraiser, and assessed for duty by the collector, as toys, at 70 per centum ad valorem, under paragraph 1414, of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1414. Dolls, and parts of dolls, doll heads, toy marbles, * * * and all other toys, and parts of toys, not composed of china, porcelain, parian, bisque, earthen or stone ware, and not specially provided for, 70 per centum ad valorem.

In its protest to the collector's classification, the importer claimed that the merchandise was properly dutiable at 25 per centum ad valorem under paragraph 1439, as manufactures of india rubber, not specially provided for, or as sponges at 15 per centum ad valorem, or manufactures of sponges at 25 per centum ad valorem under paragraph 1447, or as toilet brushes or other brushes at 45 per centum ad valorem under paragraph 1407.

The Board of General Appraisers sustained the protest, and held that the merchandise was dutiable at 25 per centum ad valorem under paragraph 1439, as manufactures of india rubber not specially provided for, and the Government appealed.

The Government contends that the imported articles are "toys" and were properly classified by the collector under paragraph 1414, supra. This contention is based upon the case of *Illfelder* v. *United States,* 1 Ct. Cust. Appls. 109, T. D. 31115, in which this court held that—

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it can not be classed as a toy unless it is affirmatively shown by the importer that it is so known and designed by the trade generally.

Do these articles come within the definition of a "toy"? Are they essentially playthings, designed and intended to be used for the amusement of children only, and are they by their "very nature and character *reasonably* fitted for no other purpose?"

It should be noted that this court held in the Illfelder case that—

Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is *reasonably capable* of use for some *practical purpose* other than the amusement of children, it can not be classed as a toy *unless* it is affirmatively shown by the importer *that it is so known and designated by the trade generally.* (Italics ours.)

It appears from the evidence in the case that these articles are used for bathing purposes by children and adults. They were made in the shape of animals and other forms, because they are to some extent more ornamental than the ordinary rubber sponge. It appears that they do amuse children and probably make "the bath" more attractive to them. It seems to us from the record that the amusement which children derive from the articles, is incidental to the utilitarian purpose and use to which the articles are put and for which they were designed. Therefore these articles are not "toys" as defined by this court in the case of *Illfelder* v. *United States, supra,* and ought not to be classified as "toys," unless it appears from the evidence that they were so known and designated by the trade.

The Government assigns as error the refusal of the trial court to permit the introduction of evidence to prove that a class of articles manufactured in the United States, of material similar to some extent to that of which the imported articles were made, but of different shapes and designs, was known in the trade as "toys," in order to prove commercial designation of the imported articles.

It does not appear from the testimony of the Government's witness that he had ever bought or sold merchandise which was in any respect similar to the imported articles, except as to the material of which it was composed. There was no evidence that the domestic merchandise was used in substantially the same manner, or for the same purposes for which the imported articles were used.

It appears from an examination of the exhibits in the case that the merchandise handled by the witness, represented by "Exhibit 5," is substantially dissimilar to the imported articles and was probably not designed for the same use. If it was intended for the same use, it certainly is less practical for such purpose than the imported articles.

The merchandise represented by "Exhibit 5" is not only dissimilar to the imported articles in shape, which may not be of great importance, but it is also different in other and important respects. We quote from the cross-examination of the witness Jacob Rubin,

who was the only witness presented by the Government on the question of commercial designation:

Q. Which one do you say yours is like?—A. Ours is not exactly like any of them.

Q. It is not exactly like any of them? · What is the nearest one to it, please?—A. I don't know what you mean by that.

Q. Well, in appearance.—A. I can't say which is the nearest one to it.

Q. As a matter of fact, yours has what purports to be a band or belt on the arms?—A. Yes.

Q. Also around the so-called body?—A. Yes.

Q. Then it has dots which are added on the surface?—A. Buttons.

Q. And what purports to be a collar around the neck?—A. Yes.

Q. And spots for eyes and the mouth?—A. Yes.

Q. And also what is intended for a cap or hat or something like that?—A. Yes.

The bands, buttons, spots, and cap or hat referred to in the quoted testimony are composed of smooth rubber and for this reason make the domestic articles less suitable for bathing and like purposes than the imported articles.    Of course, the smooth rubber bands, buttons, spots, and the head piece could be removed, in which condition the domestic article would probably be as suitable for bathing purposes as the imported articles, but in that event the domestic article would no longer be the article represented by "Exhibit 5."

It is evident from the testimony of the witness that he was not qualified to testify on the question of commercial designation.    He had never bought or sold, nor was he familiar with the trade designation of, articles *like* the imported articles, although he had dealt in articles to some extent *similar* to those imported.

The Government contends that the question in this case is controlled by the principle announced in the case of *Masson* v. *United States*, 3 Ct. Cust. Appls. 420, T. D. 33000.

We quote from the opinion in that case:

The importer's counsel moved to strike out the testimony of certain of the witnesses for the Government because of the fact that they had not dealt in the imported wares in question, but only in similar wares of domestic manufacture, the contention of counsel in that behalf being that only such witnesses as had dealt in imported wares similar to those in controversy were qualified to testify concerning the trade designation of such articles.    This motion was not sustained by the board.    It was rightly held, in effect, by the board that a witness might obtain a competent knowledge of the commercial meaning of a trade term by means of his experience in the same trade obtained by dealing in a competing article of a similar character.

It is at once apparent that this court in that case was considering the question of whether the qualification of a witness preliminary to proof of commercial designation should be confined to knowledge of *like imported* articles, or whether such qualification extended to include knowledge of *like* articles produced in the United States.    The element of *similarity* was not involved in that case.    There the arti-

cles were *like* articles, the only distinction being that one was produced in the United States, while the other was manufactured abroad and imported into the United States.

The judgment is *affirmed*.