NEW YORK MERCHANDISE CO., INC. *v.* UNITED STATES (No. 4217)[1]

[1] C. A. D. 72.

United States Court of Customs and Patent Appeals, October 30, 1939

*Siegel & Mandell* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

[Oral argument October 2, 1939, by Mr. Mandell and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division.

Merchandise, consisting of so-called "novelty sponges" in the form of pigs, dogs, clowns, parrots, and, according to the briefs of counsel for the parties, either peacocks or ducks, composed of sponge rubber, each form, due to its contour and the variety of colors of the body and its appendages (by appendages we mean, for example, the ears, legs, and tails of the dogs), being grotesque in appearance, was held to be dutiable by the trial court as toys at 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as assessed by the collector at the port of New York, rather than as manufactures of india rubber at only 25 per centum ad valorem under paragraph 1537 (b) of that act as claimed by the importer.

So far as pertinent, the paragraphs in question read:

PAR. 1513. * * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. * * *

PAR. 1537. (b) Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for, 25 per centum ad valorem. * * *

On the trial below counsel for the importer introduced in evidence as representative of the involved merchandise Collective Exhibit 1, which consists of one each of the articles hereinbefore described.

Three witnesses testified for appellant—Milton Shaw, a buyer and salesman, employed by the appellant company; Irving Kishter, formerly employed by appellant as a salesman but who, at the time of the giving of his testimony, was connected with the firm of Max Kishter & Co., which firm, the witness stated, was engaged in selling imported goods; and Samuel Mellis, an assistant buyer and salesman for the appellant company.

The witness Shaw stated that he had seen articles like those of which Collective Exhibit 1 is representative used by mothers and nurses in bathing children 2 or 3 years of age, and that he had seen them so used approximately 2 or 3 dozen times in his own home and in the homes of friends in New York and Los Angeles. We quote from the testimony of the witness:

Q. Will you state, Mr. Shaw, how this article is used?—A. It is used to sponge the body, and also as an ornamentation in the bathroom.

Presiding Judge McClelland: Which would you say is the chief use?

The Witness. The chief use was to sponge the body; and secondly, as an article of ornamentation.

\*    \*    \*    \*    \*    \*    \*

Q. Have you seen the articles like exhibit 1 used in homes for the purpose of bathroom decorations?—A. Yes, sir; I have, as an article of ornamentation.

Q. Please describe the manner in which it is used.—A. In many homes I have seen these articles set up in the corner where the bathtub meets the wall, as an article of ornamentation; and it adds to the decoration and color scheme of the various bathrooms.

Q. *Do you know of a use for articles like those in collective exhibit 1, for the purpose of amusement of children under the age of 14?*—A. *Well, I have never seen a child play with it as a toy, or to be used outside of the bath.* If this is exposed to the air without getting water for any length of time it becomes hard and cakey, and brittle, and becomes ineffectual. In order to preserve it, it must be occasionally thrown into the water and used for the purpose for which it was made, as a bath sponge. I suppose that on occasions, I won't deny that it has been used as an article for amusement, but to me, principally, it is used as——

Presiding Judge McClelland. *Do you suppose this exhibit could be used practically in the bath, for cleansing purposes?*

The Witness. *Not practically, but it is used for sponging the body.* It crumples up into a very small quantity, and does contain soap very readily, and is used to sponge the body. This is also used as an article of ornamentation—this exhibit 1. [Italics ours.]

On cross-examination, the witness testified in part as follows:

X Q. Now, in regard to the use of collective exhibit 1; have you at any time seen an adult use collective exhibit 1, or articles included within exhibit 1?—A. I have used it myself.

X Q. But you have never seen any other adult over 14 years of age use an article like collective exhibit 1?—A. Yes, I have; at my golf club, where I brought the stuff up to the locker room and the men have used them, and they have been lying around ever since.

\*    \*    \*    \*    \*    \*    \*

X Q. Did those children of those ages mentioned by you appear to be deriving. amusement from playing around with articles like collective exhibit 1?—A. It was being used by the mother or the nurse, giving the child a bath. Of course, the child was enjoying it.

X Q. I think you testified on the direct examination that this youngster was. amused by the articles like collective exhibit 1?—A. *There is an element of amusement, yes, sir. I can't deny that. That is why it is made in the novelty shape.*

X Q. To amuse the youngster?—A. *As an additional factor.* [Italics ours.]

The witness Kishter testified that he had seen articles like Collective Exhibit 1 used for "bathing purposes only" in bathtubs and in "showers" on numerous occasions; that he had seen his own child and the children of his sisters and brothers (13 in all) under the age of 14 use articles like Collective Exhibit 1 for bathing purposes and that they were having an interesting time; and that he had also seen his two brothers and a brother-in-law, all adults, using articles. like Collective Exhibit 1 as bath sponges.

The witness Mellis stated that he had used articles like Collective Exhibit 1 for bathing purposes; that he had seen his wife and some of his customers in New York, Boston, Philadelphia, and some place in New Jersey use such articles for bathing children from 3 to 4 years of age; that, although children appeared to derive some amusement from articles like those here involved while being bathed, such articles were not necessarily designed for the amusement of children; and that he had seen similar articles used as ornaments in bathrooms.

The Government introduced in evidence the testimony of two. witnesses—William Henry Mason, a partner in the firm of "Mason Bath Toys," and Frederick Siemer, employed as a salesman by the Sponge Rubber Products Co. of Derby, Conn.

The witness Mason testified that his company manufactured. articles similar to Collective Exhibit 1, and sold them throughout the United States. We quote from his testimony relative to their use:

Q. Will you please describe to the court the manner in which you saw articles. like collective exhibit 1 used?—A. These articles are usually used by small children, usually a little above the infant age, in the bath, as they are attractive to a. child, because he has got something to play with when its mother washes him. It is a thing that he can wave around, and as I have seen the children they usually wave them around, doing this with them [indicating, waving the arm] when they got the things in the water. They douse it in and out, thinking they are washing something when they are being washed themselves.

Q. Practically how old were the children that you saw using articles like collective exhibit 1?—A. Children a year and half, 2 years, or 3 years. I have seen those over 6 years.

Q. Have you ever seen children use articles like collective exhibit 1 at any other place except in connection with the bath?—A. No; excepting when they yell and want to take it to the bedroom.

Q. How many times, approximately, have you seen children under the age of 14 use articles like collective exhibit 1?—A. Oh, many times. My child has used it; and I have seen children of my friends using them, and my attorney's children.

Q. In what section of the country have you seen children under the age of 14 use articles like collective exhibit 1?—A. Ridgewood, New Jersey—In the United States—you say?

Q. At any place in the United States?—A. In New York City.

Q. At any other place?—A. No; not in the United States.

Q. Have you ever seen people over the age of 14 use articles like collective exhibit 1?—A. No.

The witness Siemer testified that his company made sponges similar to those here involved; that he had two children, one 3 years of age and the other 7; that he had seen the younger child play with articles like Collective Exhibit 1 both inside and outside the bathtub; that he had seen the older child play with similar articles outside the bathtub; and that he had never seen such articles used by adults.

The Government also offered in evidence Illustrative Exhibit A, which consists of a page taken from a catalog published by the Sponge Rubber Products Co., of Derby, Conn., and on which appears certain illustrations and descriptions of "sponge rubber" articles. The witness Siemer stated that the articles displayed on the exhibit were similar to but one (the article in the form of a clown, marked Exhibit No. 1–A) of the articles contained in Collective Exhibit 1, and that such similarity was shown by the pictures on Illustrative Exhibit A.

Counsel for the Government quoted in their brief from Illustrative Exhibit A as follows: "Bath Tub Toys. Toys are so designed that pieces or a small cake of soap may be inserted. The porous nature of the rubber allows the soap to ooze through, producing a wonderful lather. Kiddies will love their baths with one of these practical novelty sponges," and apparently rely upon the statements contained therein as evidence tending to establish that the involved articles are toys.

It will be observed from the quoted excerpt from Illustrative Exhibit A that the toys therein referred to are so designed that pieces of soap may be inserted therein, and that the "porous nature of the rubber allows the soap to ooze through, producing a wonderful lather." The article in the form of a clown (Exhibit 1–A), contained in Collective Exhibit 1, is not so designed that pieces of soap may be inserted therein, and in that respect the toys referred to in the quoted excerpt from Illustrative Exhibit A differ from the clown and the other forms contained in Collective Exhibit 1.

In view of the fact that the involved articles were classified by the collector as toys under the provisions of paragraph 1513, *supra*, and as a toy is defined in that paragraph as "an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development," the burden was upon the importer to establish by a preponderance of the evidence that at or

immediately prior to the date of importation the involved or like articles were not chiefly used for the amusement of children. See *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762.

In its decision the trial court, after quoting *in extenso* from the testimony of record, among other things, said:

> The foregoing testimony indicates that these articles (Collective Exhibit 1) are used in the bathroom (1) for bathing purposes, *chiefly* for bathing babies and small children; (2) for the amusement of the children being bathed; and (3) as ornaments in the bathroom. Is their chief purpose for the amusement of the children, the bathing, or the ornamentation? The testimony does not indicate. It stands to reason that these articles would not be made in such comical shapes if the amusement of the children were not desired; otherwise, if they were chiefly used for the practical purpose of bathing a plain piece of sponge rubber would be more suitable. In our opinion the evidence does not indicate that these articles are *chiefly* used for other purposes than the amusement of children. The presumption arising from the collector's classification is that they are.

> \* \* \* \* \* \* \*

> The proof in the case at bar does not indicate that the *chief* purpose of these sponges is for the practical purposes of bathing or for ornamentation. For aught this record indicates to the contrary, the amusement of the child during the process of bathing may be the chief use and design of these toys. We think, further, that the collector's classification is upheld by an examination of Collective Exhibit 1.

Counsel for appellant here contend that the evidence establishes that the involved articles are not chiefly used for the amusement of children, because "there has been a definite showing that they are used by adults and that they are chiefly used for the bathing of children."

It is true that appellant's witness Shaw stated that the involved articles were used to sponge the body and also for ornamentation in bathrooms, and, in answer to a question propounded by Presiding Judge McClelland, stated that the "chief use was to sponge the body; and secondly, as an article of ornamentation," and that he had seen them used for bathing children 2 or 3 dozen times in his own home and in the homes of friends in New York and Los Angeles. However, in answer to the question propounded by Presiding Judge McClelland, "Do you suppose this exhibit [referring to Collective Exhibit 1] could be used practically in the bath, for cleansing purposes?" the witness said: "Not practically, but it is used for sponging the body. \* \* \*" He further stated in substance that the involved articles were made in their novel shapes and given their grotesque appearance for the purpose of making them amusing to children. Appellant's witnesses Kishter and Mellis also testified, as hereinbefore noted, that they had seen articles like those here involved used for bathing children, and that they appeared to afford the children some amusement.

Considering the testimony submitted by appellant and that submitted by the Government together with the imported articles (Collective Exhibit 1) we are unable to hold that the conclusion reached by the trial court is contrary to the weight of the evidence.

Counsel for the importer further contend that in the case of *United States* v. *Globe Overseas Corporation*, 13 Ct. Cust. Appls. 10, T. D. 40849, this court found from the evidence that the amusement feature of so-called novelty sponges in the form of dogs, Santa Clauses, clowns, etc., there involved, was incidental to the use to which the articles were put and for which they were designed, and that as the facts before the court in that case and those before the court in the instant case are similar, it should be held that as the amusement feature of the involved articles is incidental to their utilitarian use they are not chiefly used for the amusement of children, and, therefore, are not toys within the meaning of paragraph 1513, *supra*.

With regard to the latter contention, it is sufficient to say that the *Globe Overseas Corporation* case, *supra*, was decided upon the record there presented, which is not before us in the case at bar, and in conformity with the then-existing law. The paragraph under which the merchandise there involved was assessed was paragraph 1414 of the Tariff Act of 1922. That paragraph differed from paragraph 1513, *supra*, in that it did not contain the provision that the term " 'toy' means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development."

In our decision in that case we quoted the definition of a "toy" from our decision in the case of *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, T. D. 31115, as follows:

In common speech, and as popularly understood, a toy is essentially a plaything, something which is intended and designed for the amusement of children only, and which by its very nature and character is *reasonably* fitted for no other purpose. Although an article may be chiefly used for the amusement of children, if its nature and character are such that it is also reasonably fitted for the amusement of adults, or if it is reasonably capable of use for some practical purpose other than the amusement of children, it cannot be classed as a toy unless it is affirmatively shown by the importer that it is so known and designated by the trade generally.

and, among other things, said:

It appears from the evidence in the case that these articles are used for bathing purposes by children and adults. They were made in the shape of animals and other forms, because they are to some extent more ornamental than the ordinary rubber sponge. It appears that they do amuse children and probably make "the bath" more attractive to them. It seems to us from the record that the amusement which children derive from the articles, is incidental to the utilitarian purpose and use to which the articles are put and for which they were designed. Therefore these articles are not "toys" as defined by this court in the case of *Illfelder* v. *United States*, *supra*, and ought not to be classified as "toys," unless it appears from the evidence that they were so known and designated by the trade.

The issues in the case at bar are so different from those involved in the *Globe Overseas Corporation* case, *supra*, as was plainly pointed out by the trial court, as to make it apparent that the decision in the latter case has no relevancy to the issues in the case now under consideration.

For the reasons stated, the judgment is *affirmed*.